GRANVILLE L. VAUGHAN, ROWLAND G. VAUGHAN, ELEANOR EVANS, RUSSELL EVANS, WILLIS EVANS, BEATRICE MARCINO, JOSEPH EVANS, WARD F. EVANS, ANNA L. DURKIN and JOHN B. VAUGHAN v. GEORGE EDWARD VEASEY.

134

(*July* 20, 1956.)

CAREY, J., sitting.

*Robert W. Tunnell* (of Tunnell and Tunnell) for plaintiffs.

*Daniel J. Layton, Jr.,* for defendant.

Superior Court for Sussex County, No. 144, Civil Action, 1955.

CAREY, J.:

■■ In arguing that the Act deprives defendant of the right to a jury trial, he construes the word "court", as used therein, to be synonymous with "judge". With this interpretation, I cannot agree. It is undoubtedly true that those words are sometimes used as synonyms in statutes and are frequently so treated by laymen and lawyers. On the other hand, the word "court" is just as appropriately used to describe a body or organ of the government organized to administer justice, and in this sense it includes both judge and jury. *Black's Law Dictionary*, 3d ed. 457; 14 *Am. Jur.* 249. In any given instance, therefore, we must endeavor to discover which meaning was intended by the Legislature.

■ There is always a presumption in favor of the validity of an act of the Legislature, and as between two possible interpretations of a statute, it is the duty of the Court to accept that one which will be in harmony with the Constitution, as opposed to one which is in conflict therewith. *Collison v. State ex rel. Green*, 9 *W. W. Harr.* 460, 484, 2 *A.* 2d 97, 119 *A. L. R.* 1422. This basic rule requires us to hold that the General Assembly did not intend to deprive a litigant of his right to a jury trial, unless there be language in the act itself which clearly dictates a contrary holding.

■ In the present statute, there is nothing in the first paragraph, Section 1401, to suggest an intent to eliminate the right of a jury trial in timber trespass cases. It is argued, however, that the word "court" in section 1403 is used in contra-

distinction to "jury" and that it must be presumed that the word has the same meaning throughout the statute. The true interpretation of Section 1403, in my opinion, is that a defendant, by his failure to appear or answer, admits the trespass and the wilfulness thereof; by his default and the consequent admission, he waives the trial of those issues, leaving the amount of damages as the only matter for determination—an inquisition, in short. His rights with respect to that inquisition—whether it is to be held with or without a jury—are not settled by this Act, but are to be determined by other statutes and rules of practice. In this connection, we must remember that jurisdiction over trespass actions is not restricted to the Superior Court, the only forum in this State attended by a common law jury; under some conditions, such actions may be brought before a justice of the peace or in a Court of Common Pleas. Wherever brought, the assessment of damages depends upon the practice of that particular Court. With this in mind, it becomes clear that the Legislature, in Section 1403, did not prescribe a method of assessing damages but intended that it be done in accordance with established practice. It cannot be held, therefore, that this Act deprives a litigant of any right to jury trial which he would otherwise possess. *Cf. Miles v. Strong,* 68 *Conn.* 273, 36 *A.* 55.

In *Jordan v. Delaware & A. T. & T. Co.,* 1 *Boyce* 107, 75 *A.* 1014, defendant was charged with mutilating certain shade and fruit trees of the plaintiff. The jury was told that it could award exemplary or punitive damages if it found that the cutting was malicious, or wilful and wanton in character. It is extremely doubtful, therefore, whether defendant's motion to dismiss could be granted even if the Timber Trespass Act should be held invalid. Certainly the complaint sets forth a cause of action for actual damages. Moreover, as the complaint also charges wilfulness, it perhaps states a proper case for the allowance of exemplary damages. Notwithstanding all this, it seems desirable to discuss some aspects of the statute, because failure to do so at this stage would simply make such determination necessary at the trial, in all probability.

 Besides setting a standard for fixing the amount of exemplary damages, the first paragraph of the Act, Section 1401, when read as a whole, must be interpreted as laying down a rule of evidence. Under it, a plaintiff must of course prove a trespass consisting of the cutting or damaging of standing timber, in order to recover anything. To obtain multiple damages, he must prove wilfulness. He may do this by showing that his property line was *properly* marked by reasonably permanent and visible markers, or that the defendant was on notice that the plaintiff's rights were in jeopardy. When read literally, the second sentence would seem to require the finding of wilfulness upon such a showing; but, when that sentence is read in conjunction with the others, it is seen that nothing more than a *prima facie* case is made out, which may be rebutted by showing the trespass to have been unintentional. This paragraph thus does not prescribe a rule of conclusive evidence of the type condemned in *Appeal of Brown,* 4 *Terry* 608, 49 *A.* 2d 618, but states a rule of presumption. As such, it cannot be held unreasonable. If a man goes beyond visible markers or is on notice in some way that he is jeopardizing another's rights, and cuts trees upon that other's lands, it is not unreasonable to presume that he did so wilfully, unless he can show that it was in fact unintentional.

 The last paragraph, Sec. 1405, is couched in language suggestive of a rule of conclusive presumption, but the true intent is to create a rule of substantive law, for the violation of which a defendant becomes liable for exemplary damages. *Cf.* 4 *Wigmore on Evidence* (3d ed.) 714 etc. Its effect is to direct an owner who plans to cut timber to notify the adjoining owners of this intention, and makes him pay treble damages if he fails to give that notice and cuts trees of that adjoining owner. The constitutionality of this section is therefore to be determined not by the law of evidence but by rules of substantive law.

The object of the statute is the better protection of the owners of standing timber. Its adoption was induced by the ten-

dency of some timber cutters to be extremely careless about observing property lines. Obviously, the Legislature became convinced that the evil has become so widespread as to demand stronger deterrents than were provided by the criminal statutes and civil remedies previously existing. Instead of making the criminal law more stringent, it has modified the civil remedy so as to cast greater burdens upon the wrongdoer, subjectively and adjectively. The method adopted seems reasonably suitable to accomplish this purpose. To enforce greater respect for property lines, the trespasser is made to pay treble damages unless his act is unintentional; if the line is visibly marked or if he is otherwise on notice, he has the job of rebutting the inference thereby created. Before he starts to cut, he must notify the adjoining owners, thereby giving them the chance of marking any unmarked lines or otherwise protecting themselves; his failure to notify them creates treble liability if he cuts their timber.

It is difficult to see just what there is in this scheme which runs afoul of any constitutional injunction. Many other states have long had statutes imposing multiple liability upon timber trespassers. VI-A *American Law of Property* 50; 111 *A. L. R.* 79 etc. No instance has come to my attention in which such acts have been declared invalid for any of the reasons suggested by this defendant. Most of his contentions are based upon his interpretation of the Act, which differs materially from the views above expressed. To the proposition that the statute discriminates between timber trespassers and those committing some other kind of trespass, the short answer is that the Legislature has obviously found existing laws adequate to control the others, and that timber trespassers present problems needing special treatment. This does not violate the rules of classification set forth in *Zink v. Kessler Trucking Co.*, 8 *W. W. Harr.* 271, 190 *A.* 637. Cf. *Missouri Pacific Railroad Co. v. Humes*, 115 *U. S.* 512, 6 *S. Ct.* 110, 29 *L. Ed.* 463; *State v. Shevlin-Carpenter Co.*, 99 *Minn.* 158, 108 *N. W.* 835; *Dutton Phosphate Co. v. Priest*, 67 *Fla.* 370, 65 *So.* 282; *Jensen v. South Dakota Cent. Ry. Co.*, 25 *S. D.* 506, 127 *N. W.* 650, 35 *L. R. A., N. S.*, 1015.

One specific objection should perhaps be mentioned. Defendant says that under Section 1405 he is charged with full knowledge of the legal title of neighboring land, a burden not imposed upon other types of trespassers. Whether or not the Court will, in any and all circumstances, apply the language of this section so strictly and literally need not be now decided. No facts are presently before the Court save the bare and as yet undenied charge that defendant gave no notice to plaintiffs, who have been damaged by his wilful timber trespass upon their land. How fully a person must investigate title of adjoining lands, or what excuses, if any, will be accepted for failure to notify the true owner, are matters to be adjudicated as they arise. The issue at the present stage is purely one of constitutionality, and no reason is perceived why the requirement of this paragraph renders the Act totally invalid.

Defendant's motion must be denied.