PAINTING INDUSTRY OF HAWAII MARKET RECOVERY FUND, Plaintiff-Appellant *v.* ROBERT A. ALM, DIRECTOR OF COMMERCE AND CONSUMER AFFAIRS; and THE STATE OF HAWAII, Defendants-Appellees

NO. 12094

(SPECIAL PROCEEDINGS NO. 86-0371)

DECEMBER 3, 1987

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY LUM, C.J.

The issue in this appeal is whether a settlement agreement between the Department of Commerce and Consumer Affairs (DCCA) and a corporate public works contractor regarding license law violations by the contractor must be disclosed to the public. The answer to this issue turns on whether the settlement agreement is a personal record under Hawaii Revised Statutes (HRS) §§ 92-50 and 92E-1. The Circuit Court of the First Circuit ruled the agreement to be a personal record, and precluded disclosure. We reverse.

I.

On October 17, 1985, a complaint was filed with the Regulated Industries Complaint Office (RICO) of the DCCA alleging violations of the wage and hour laws by Metropolitan Maintenance (Metropolitan), a licensed contractor. RICO investigated the complaint and subsequently entered into a settlement of the alleged violations with Metropolitan and Donald Tagawa, Metropolitan's responsible managing employee.

The Plaintiff, Painting Industry of Hawaii Market Recovery Fund, requested disclosure of the settlement agreement by the DCCA pursuant to HRS § 92-51. The DCCA refused on the ground that the settlement was not a public record. Plaintiff then filed the instant suit to compel public disclosure of the agreement.

On January 5, 1987, the Circuit Court of the First Circuit ordered disclosure of the settlement after examination *in camera*. The document was sealed to permit the DCCA an opportunity to appeal. On reconsideration, the court on March 6, 1987, vacated the order and precluded disclosure of the settlement on the ground that it was a personal record under HRS § 92E-1.

II.

A public record is defined under HRS § 92-50 as:

[A]ny written or printed report, book or paper, map or plan of the State or of a county and their respective subdivisions and boards, which is the property thereof, and in or on which an

entry has been made or is required to be made by law, or which any public officer or employee has received or is required to receive for filing, but shall not include records which invade the right to privacy of an individual.

As we read this statute, if the settlement agreement was received for filing, the statute is satisfied, unless the agreement is a record which invades the right to privacy of an individual. In the instant case, the agreement had been assigned a file number. Additionally, the terms of the agreement provide that if it is violated, the DCCA may introduce this settlement as evidence in disciplinary proceedings against Metropolitan or Tagawa. Therefore, we conclude the agreement is subject to disclosure under HRS § 92-50, unless such disclosure invades Tagawa's right to privacy.

The term "right of privacy of an individual" is not defined in Chapter 92. The legislative history, however, may be helpful in determining the scope of information to be protected by the right to privacy in this context. *Gakiya v. Hallmark Properties, Inc.*, 68 Haw. ____, ____, 722 P.2d 460, 463 (1986). The operative language of this statutory section was first adopted in 1959.[1] Act 43, § l(b), 1959 Haw. Sess. Laws, at 30. In discussing the scope of this provision, the Judiciary Standing Committee states: "Your Committee intends that records which invade the right of privacy of a person should remain confidential. Among the list of records which the Committee felt should remain confidential were examinations, public welfare lists, unemployment compensation lists, application for licenses and other similar records." Hse. Stand. Comm. Rept. No. 594, in 1959 House Journal, at 797.

From this list, we conclude that the legislature did not intend to keep confidential items such as those presented to us in the instant case. Here, the information about Tagawa mentioned in the agreement is (1) that he is Metropolitan's responsible managing employee; (2) that he held a contractor's license; and (3) that he agrees to comply with the wage and hour laws in the future. The

---

[1] This section was later recodified by its repeal and simultaneous re-enactment without a change in the language as HRS § 92-50. Act 166, § 2, 1975 Haw. Sess. Laws 364-67. This recodification has no substantive effect. lA N. Singer, *Sutherland Statutory Construction* § 23.28 (4th ed. 1985).

first two items of information contained in the settlement are already public pursuant to HRS § 444-14(a) and state practice. As to the third piece of information, we find no privacy interest in keeping confidential the inference that Tagawa may have violated state statutes in the past.

This is supported by the general policy behind Chapter 92, as stated in the preamble. "[T]his legislature declares that it is the policy of the State that the formation and conduct of public policy — the discussions, deliberations, decisions, and action of governmental agencies — shall be conducted as openly as possible." HRS § 92-1. In this instance, the public has a legitimate interest in knowing whether our contract licensing laws are being properly enforced by governmental agencies, and in knowing who is violating these laws.

Thus, we conclude that Tagawa's right to privacy would not be violated by disclosure, and therefore, the settlement agreement is a public record under HRS § 92-50.

Our inquiry does not end at this point. HRS § 92-51 provides that "[a]ll public records shall be available for inspection by any person during established office hours unless public inspection of such records is in violation of any other state or federal law[.]" The DCCA contends that because the settlement agreement is a personal record under HRS § 92E-l, disclosure would be in violation of HRS § 92E-4. Thus, we turn to an examination of that chapter.

### III.

HRS Chapter 92E was expressly intended to implement in part the right of privacy codified in the 1978 amendment to the Hawaii State Constitution in article I, section 6. Act 226, § 1, 1980 Haw. Sess. Laws, at 378. The purposes of Chapter 92E are: to allow an individual to gain access to governmentally maintained personal records which pertain to that person; to allow the individual to amend or correct those records; and to secure the confidentiality of personal records. Conf. Comm. Rep. No. 46-80, in 1980 House Journal, at 1098.

A personal record is defined under HRS § 92E-l as follows:

"Personal record" means any item, collection, or grouping of information about an individual that is maintained by an agency. It includes, but is not limited to, the individual's educational, financial, medical, or employment history, or items that contain or make reference to the individual's name, identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph. "Personal record" includes a "public record," as defined under section 92-50.

The DCCA argues that the settlement agreement is a personal record because it is information "about an individual" which includes "items that contain or make reference to the individual's name." Certainly, the settlement agreement contains Mr. Tagawa's name. In most cases, the result would be absurd and unjust if the mere mention of a person's name were enough to classify a document as "personal," and so we will reject this construction. *Gibb v. Spiker*, 68 Haw. ___, ___, 718 P.2d 1076, 1080 (1986). *But see Barber v. McCotter*, 106 N.M. 1, 738 P.2d 119 (1987) (names of correctional employees terminated after urinalysis testing not disclosed). Thus, the issue is whether the settlement agreement is "about" Mr. Tagawa. The DCCA asserts this is so because Tagawa was subject to discipline if Metropolitan violated the law and was also a party to the settlement.

As previously stated, the purpose of the statute is to implement in part the constitutional right to privacy. Thus, the scope of information protected must be consistent with that right. The right to privacy provided by article I, section 6 of the state constitution clearly encompasses privacy of information held by the government. The following committee report was adopted by the convention as a whole, and reads in part:

[I]t is the intent of your Committee to insure that privacy is treated as a fundamental right for purposes of constitutional analysis. Privacy as used in this sense concerns the possible abuses in the use of *highly personal and intimate information* in the hands of government or private parties but is not intended to deter the government from the legitimate compilation and dissemination of data. (Emphasis added).

Comm. Whole Rep. No. 15, in Proceedings of the Constitutional Convention of Hawaii of 1978, Vol. I, at 1024.

The settlement agreement does not contain information that is "highly personal and intimate," such as medical, financial, educational, or employment records. Instead, the agreement concerns a corporation's violation of wage and hour laws. Mr. Tagawa is included in the agreement because fictional entities cannot act on their own behalf. Additionally, if the DCCA had decided to hold a formal disciplinary hearing before the Contractor's Licensing Board, this information would have been public under HRS § 444-18. Thus, we conclude that the settlement agreement is not within the protection of HRS § 92E-1.

Reversed and remanded for proceedings consistent herewith.

*Michael A. Lilly* for plaintiff-appellant.

*Nathan J. Sult,* Staff Attorney, Dept. of Commerce & Consumer Affairs (*Grant Tanimoto,* Deputy Attorney General, Dept. of Attorney General, with him on the brief) for defendants-appellees.