869 P.2d 1320

Larry E. MEHAU; Hawai'i Protective Association, Ltd., a Hawai'i corporation; and Ma–Mon Productions, Inc., a Hawaii corporation, Plaintiffs–Appellants/Cross–Appellees,

v.

Rick REED, Defendant–Appellee/Cross–Appellee,

and

City and County of Honolulu, a municipal corporation, Defendant–Appellee/Cross–Appellant,

and

Charles Marsland, Jr., Donald Carstensen, and Doe Defendants 1–100, Defendants.

No. 16851.

Supreme Court of Hawai'i.

March 10, 1994.

David C. Schutter (Mitchell S. Wong, with him on the briefs, of Schutter & Glickstein), Honolulu, for plaintiffs-appellants/cross-appellees.

Hazel G. Beh (Rodney Veary and Michael N. Tanoue, with him on the briefs), Deputies Corp. Counsel, Honolulu, for defendant-appellee/cross-appellant.

Before MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, JJ. and Circuit Judge NAKATANI, in Place of KLEIN, J., recused.

MOON, Chief Justice.

Plaintiffs-appellants Larry Mehau, Hawai'i Protective Association, Ltd. and Ma–Mon Productions, Inc.[1] (collectively, Mehau) appeal from an order denying their motion for judgment notwithstanding the verdict (JNOV) or, alternatively for a new trial, as to defendant-appellee City and County of Honolulu (City). Subsequent to a jury trial that resulted in a verdict in favor of the City and co-defendant Rick Reed, the trial court granted Mehau a new trial as to Reed, but refused to enter JNOV or grant a new trial as to the City. On appeal, Mehau claims that: (1) a judge, rather than a jury, should have decided the question of liability under Hawai'i Revised Statutes (HRS) § 92E–11(c) (1985) (unauthorized disclosure of personal records); and (2) the trial court's rulings regarding Reed and the City were inconsistent. We hold that the court properly submitted the liability question to the jury and that the court's rulings were consistent.

---

1. Larry Mehau is the president and principal shareholder of both Hawai'i Protective Association, Ltd. and Ma–Mon Productions, Inc.

Therefore, we affirm.[2]

## I. BACKGROUND

Larry Mehau is a Big Island cattle rancher, former police officer, former member of the State of Hawai'i's Board of Land and Natural Resources, and the owner of a large security guard business. Reed is a Republican State Senator and former congressional candidate.

Prior to 1977, Mehau had received extensive publicity regarding his associations with political figures in Hawai'i. In 1977, television reporter Scott Shirai announced in a newscast that "the godfather of Hawai'i organized crime" was sitting on an influential state board. A month later, *The Valley Isle*, a Maui newspaper published by Reed, released a story identifying Mehau as "the godfather." The article implicated "the godfather" in the deaths of Hawaiian activists Kimo Mitchell and George Helm. According to the story, (1) Helm was planning to publicly expose Mehau as the "godfather" and link him with "certain activities," (2) Mehau allegedly threatened Helm, and (3) shortly thereafter, Helm and Mitchell disappeared while attempting to paddle surfboards from Maui to Kaho'olawe. Reed eventually became involved in three lawsuits (other than the present lawsuit) which sought a total of eighty million dollars in damages because of the article and subsequent publicity.[3]

On August 6, 1985, Reed, then a congressional candidate, gave a luncheon speech to the Kiwanis Club criticizing established government. In that speech, Reed referred to Mehau as "the godfather of organized crime in Hawai'i." Reed cited Mehau's influence in Hawai'i government as indicative of a corrupt political system. He called Mehau the "most powerful person in Hawai'i" whose "influence permeates our government, our criminal justice system, and even our business community."

In his speech, Reed detailed the prior lawsuits, Mehau's alleged connection with a Mafia figure, and Mehau's alleged involvement in the deaths of Helm and Mitchell. Reed also associated Mehau with the murders of a union leader, Joe Lii, and a Mehau-employee-turned-informant, Arthur Baker. Reed attempted to bolster his allegations by noting that former Mehau associates, Rodney Ching and Henry Huihui, had given statements about Mehau to law enforcement officials in exchange for leniency.[4]

At the time of his 1985 speech, Reed was employed with the City as a Special Assistant to then-City prosecutor Charles Marsland. During his employment, Reed had acquired original documents of "Operation Firebird" (Firebird), a joint state/federal investigation of Hawai'i organized crime, from Don Carstensen, also an assistant to Marsland. Carstensen, a former Honolulu Police Department (HPD) officer, had been involved in Firebird while at the HPD. Firebird participants included the Drug Enforcement Administration (DEA), the Federal Bureau of Investigation (FBI), the Internal Revenue Service, the Customs Department, the Bureau of Alcohol, Tobacco and Firearms, the HPD, and the island of Hawai'i County Police Department. According to the documents, Firebird's principal purpose was to gather information about Mehau's alleged criminal activities for a possible federal indictment.

Although the prosecutor's office was not involved in Firebird, the office had an Organized Crime Strike Force whose principal target, according to testimony, was Mehau.

---

2. Because we affirm, the City's cross-appeal is moot.

3. Apparently, Reed was eventually dropped from the previous lawsuits. Prior opinions of this court have addressed the related litigation. *See Rodriguez v. Nishiki*, 65 Haw. 430, 653 P.2d 1145 (1982); *Mehau v. Gannett Pacific Corp.*, 66 Haw. 133, 658 P.2d 312 (1983); *Beamer v. Nishiki*, 66 Haw. 572, 670 P.2d 1264 (1983).

4. Ching had confessed to the murder of Arthur Baker and Huihui had confessed to the murder of Joe Lii. In 1984, *The Honolulu Advertiser*, a daily newspaper published on Oahu, reported that Ching would be implicating Mehau in one or more of the murders. Six months before Reed's speech, Huihui had testified that Mehau knew Lii would be murdered.

Carstensen, the strike force's lead investigator, shared Firebird documents with other personnel of the strike force. Marsland also acquired Firebird and other FBI documents from a DEA agent who had worked on Firebird. There was conflicting testimony at trial as to where the Firebird and other FBI documents were actually maintained. Carstensen testified that they were his personal documents, which he kept at home. However, the trial court found that the credible evidence indicated that the documents were "maintained" by the City.

At some point during Reed's tenure at the prosecutor's office, the Firebird/FBI documents were made available to him. At trial, Reed testified that he had copied the documents because he believed they proved that law enforcement authorities shared his perception of Mehau, supported the information in the 1977 *Valley Isle* article, and rebutted accusations by Mehau's attorney in the libel suits that he had fabricated stories about Mehau.

According to Reed's testimony, his 1985 Kiwanis Club speech was based primarily on public information. However, conflicting testimony was presented regarding whether the source of information for Reed's speech was the Firebird/FBI documents. The trial court found that "[b]ased on the credible evidence Defendant Reed clearly acted 'knowingly and intentionally' in disclosing personal records of [Mehau].... Defendant Reed's 1985 Kiwanis Club speech is replete with references to the Firebird/FBI documents."

Because of the 1985 speech, Mehau filed the instant civil suit against Reed, Carstensen, Marsland, and the City. The suit alleged numerous causes of action, including defamation and violations of Hawai'i's Fair Information Practice Law, HRS chapter 92E (1985), for unauthorized disclosure of personal records, in violation of HRS § 92E-4 (1985), and sought damages as provided for in HRS § 92E-11(c).

The relevant procedural history is summarized as follows:

| Date | Event |
| --- | --- |
| August 5, 1987 | Mehau files complaint against Reed, the City, Marsland, and Carstensen alleging violation of HRS chapter 92E, defamation, false light, negligence, interference with contractual relations, invasion of constitutional right to privacy, abuse of process, malicious prosecution, false arrest, negligent and intentional infliction of emotional distress, civil conspiracy, respondeat superior and punitive damages. Mehau also demands jury trial. |
| August 27, 1987 | City files answer and demands jury trial. |
| December 9, 1988 | Mehau files supplemental complaint and demand for jury trial. |
| January 4, 1989 | City files answer to Mehau's supplemental complaint and demand for jury trial. |
| November 11, 1991 | Jury trial commences against Reed and the City before Judge Wilfred Watanabe. |
| January 24, 1992 | After the close of evidence, Mehau withdraws claims for libel, slander, defamation, and false light, leaving only the claims for violations of HRS chapter 92E and infliction of emotional distress. |
| | Mehau also orally moves that the judge rather than the jury should decide liability under Chapter 92E. The court takes the matter under advisement. |
| January 27, 1992 | The court denies Mehau's motion that judge should decide chapter 92E liability question. (Mehau has appealed from this ruling.) |
| January 29, 1992 | Case is submitted to the jury. |

February 3, 1992    Mehau moves for directed verdict, again on grounds that the judge and not the jury should decide liability. Court again takes motion under advisement.

February 4, 1992    Jury returns verdict in favor of Reed and the City.

February 13, 1992    Mehau files motion for JNOV or, alternatively, a new trial, as to both Reed and the City.

April 20, 1992    Court enters decision, denying motion for JNOV as to both Reed and the City, but granting a new trial as to Reed. (Mehau has appealed from this ruling.)

May 6, 1992    Mehau files motion for court to reconsider its April 20, 1992 ruling partially on the ground that because a new trial was granted as to Reed, JNOV or new trial should be entered as to the City.

September 8, 1992    The court enters decision denying Mehau's motion to reconsider filed on May 6, 1992. (Mehau has appealed from this ruling.)

October 12, 1992    The City files motion for entry of final judgment.

January 11, 1993    The court enters order granting motion of October 12, 1993 for entry of final judgment as to the City. (Mehau has appealed from this order.)

---

## II.  *DISCUSSION*

Mehau's primary argument is that the language of HRS § 92E–11(c) unambiguously expresses the legislature's intent to submit the issue of liability to a judge rather than a jury. Because a jury decided the liability question, Mehau asserts he is entitled to a new trial. We disagree.

■ The construction of a statute is a question of law which this court reviews under the right/wrong standard. *Vail v. Employees' Retirement System,* 75 Haw. 42, 53, 856 P.2d 1227, 1234, *reconsideration denied,* 75 Haw. ——, 861 P.2d 735 (1993).

A.  *The language of HRS § 92E–11(c) is ambiguous as to whether the issue of liability is to be determined by a judge or jury.*

■ "HRS Chapter 92E was expressly intended to implement in part the right of privacy codified in the 1978 amendment to the Hawai'i State Constitution in article I, section 6." *Painting Indus. of Hawaii Mkt. Recovery Fund v. Alm,* 69 Haw. 449, 452, 746 P.2d 79, 81 (1987) (citing Act 226, § 1, 1980 Haw.Sess.Laws, at 378). The legislature intended to protect against "possible abuses in the use of *highly personal and intimate information* held in the hands of government[.]" *Id.* at 453, 746 P.2d at 82 (emphasis in original). Accordingly, HRS § 92E–4 places limitations on an "agency"[5] from disclosing a "personal record"[6] which it maintains.[7] HRS § 92E–11 (1985) sets forth civil

5.  An "agency" is defined as "every office, officer, employee, department, division, bureau, authority, board, commission, or other entity of the executive branch of the State or of each county[.]" HRS § 92E–1 (1985).

6.  HRS § 92E–1 defines "personal record" as any item, collection, or grouping of information about an individual that is maintained by an agency. It includes, but is not limited to, the individual's educational, financial, medical, or employment history, or items that contain or make reference to the individual's name, identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph. "Personal record" includes a "public record" as defined under section 92-50.

7.  HRS § 92E–4 (1985) provides as follows:
    **Limitation on public access to personal record.** No agency may disclose or authorize

remedies for violations of HRS § 92E–4. HRS § 92E–11 [8] provides in pertinent part:

> **Civil actions and remedies.** (a) An individual may bring a civil action against an agency in a circuit court of the State whenever an agency fails to comply with any provision of this chapter. . . .
>
> . . . .
>
> (c) In any action brought under this section in which *the court* determines that the agency knowingly or intentionally violated a provision of this chapter, the agency shall be liable to the complainant in an amount equal to the sum of:
>
> (1) Actual damages sustained by the complainant as a result of the failure of the agency to properly maintain the personal record, but in no case shall a complainant (individual) entitled to recovery receive less than the sum of $100; and
>
> (2) The costs of the action together with reasonable attorney's fees as determined by *the court.*
>
> (d) *The court* may assess reasonable attorney's fees and other litigation costs reasonably incurred against the agency in any case in which the complainant has substantially prevailed, and against the complainant where the charges brought against the agency were frivolous.

(Emphasis added.)

Focusing on the phrase "the court" in subsections (c), (c)(2), and (d) above, Mehau asserts that the plain language of HRS § 92E–11 unambiguously mandates that a judge determine liability. He argues that it would be illogical to construe "the court" to mean "judge or jury" when determining liability under subsection (c) because such an interpretation would then allow a "judge or jury" to assess attorney's fees and other litigation costs under subsections (c)(2) and (d), a function which is clearly reserved for a judge.

Mehau also reasons that if the legislature intended to provide a jury trial to determine liability, it would have explicitly done so. He cites statutory provisions exemplifying this legislative practice.[9] As further proof of the

---

8. In 1988, Chapter 92E was replaced with Chapter 92F; however, the new chapter continues to provide a civil remedy for violations. Because the instant action was brought under the prior statutory scheme, we analyze 92E as it applies in this case. Moreover, HRS § 92E–11(c) is virtually identical to the new § 92F–27 (Supp.1992), which provides in relevant part:

> (c) In any action brought under this section in which the court determines that the agency knowingly or intentionally violated a provision of this *part,* the agency shall be liable to the complainant in an amount equal to the sum of:
>
> (1) Actual damages sustained by the complainant as a result of the failure of the agency to properly maintain the personal record, but in no case shall a complainant (individual) entitled to recovery receive less than the sum of *$1,000;* and
>
> (2) The costs of the action together with reasonable attorney's fees as determined by the court.

HRS § 92F–27 (Supp.1992) (emphasis added to show differences).

Importantly, however, Chapter 92F does not provide for *individual* liability as did 92E. *See* HRS § 92F–3 (Supp.1992). ("'Agency' means any unit of government in this State, any county, or any combination of counties; department; institution; board; commission; district; council; bureau; office; governing authority; other instrumentality of state or county government; or corporation or other establishment owned, operated, or managed by or on behalf of this State or any county, but does not include the nonadministrative functions of the courts of this State.").

Relating to the disclosure of personal record [sic] by any means of communication to any person other than the individual to whom the record pertains unless the disclosure is:

(1) To a duly authorized agent of the individual to whom it pertains;
(2) Of information collected and maintained specifically for the purpose of creating a record available to the general public;
(3) Pursuant to a statute of this State or the federal government that expressly authorizes the disclosure;
(4) Pursuant to a showing of compelling circumstances affecting the health or safety of any individual.

9. Mehau cites HRS § 658–3 (1985) ("If the making of the agreement [to arbitrate] or the default is in issue, the *court* shall proceed summarily to the trial thereof. A *jury trial may be demanded* by either party before or at the time of the return and if such demand is made, the issue *shall be tried before a jury,* otherwise the *court* shall hear and determine the issue.") (emphasis added); HRS § 577–9 (1985) ("In any trials of any person over the age of majority arising under sections 709–902, 709–903, 709–904, and 709–905, the person proceeded against *shall have the right to a trial by jury* which shall be granted as in

absence of any ambiguity, Mehau points out that when the legislature repealed HRS § 92E and replaced it with HRS § 92F, it adopted the identical language in conferring the determination of civil remedies for violations. Citing *Gorospe v. Matsui*, 72 Haw. 377, 819 P.2d 80 (1991), Mehau argues that

> [t]he conclusion that [HRS] § 92E–11 is not ambiguous and means what it plainly says is supported by the Legislature's failure to correct the statute when it had an opportunity to do so. *Cf. Gorospe v. Matsui*, 72 Haw. 377, 819 P.2d 80 (1991) (legislative failure to change judicial construction of statute amounts to approval of such construction).

*Gorospe*, however, is distinguishable because, unlike the present case, the statute at issue in that case had been previously construed by this court. In *Gorospe*, this court stated that "[t]he legislature has had several years in which to reflect on our [interpretation of the statute] and to correct our construction of the [statute] if it deems us to be in error. Since it has not done so, we will not depart from [our interpretation]." *Gorospe*, 72 Haw. at 381, 819 P.2d at 82. Because there had been no judicial interpretation of HRS § 92E–11 prior to the adoption

of Chapter 92F by the legislature, the principle set forth in *Gorospe* is inapplicable here.

The City, on the other hand, cites several cases wherein the term "court" was interpreted in a statute to mean either judge or jury [10] and several statutes which explicitly *bar* trial by jury.[11] The City submits that if the legislature had intended a trial by judge *without* a jury in section 92E–11(c), it could have explicitly stated such intention.

■ "'When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute an ambiguity exists.'" *Franks v. City and County of Honolulu*, 74 Haw. 328, 335, 843 P.2d 668, 671 (1993) (citation omitted). Thus, we conclude that the statutory language at issue is ambiguous.

B. *The City has a constitutional right to a jury trial under HRS § 92E–11(c).*

■ Although we may take legislative history into consideration in construing ambiguous statutory language, *see Franks*, 74 Haw. at 335, 843 P.2d at 671 (citation omitted), we need not do so here because we agree with the City's position that it has a constitutional

other cases, unless waived.") (emphasis added); HRS § 668–8 (1985) ("Whenever the legal title of any particular share or interest in the property is controverted, the issue *shall be triable of right by a jury* [.]") (emphasis added); HRS § 669–3.5 (1985) ("Whenever in an action brought under this chapter the legal title is in controversy, the issue *shall be triable of right by a jury*.") (emphasis added); HRS § 633–31 (1985) ("In a case filed or pending in the small claims division of the district court in which a party entitled to a jury files a demand therefor, the case *shall be assigned to and tried in the circuit court under the procedure provided for jury trials*.") (emphasis added); and HRS § 662–5 (1985) ("Any action against the State under this chapter *shall be tried by the court without a jury*; provided that *the court*, with the consent of all the parties, *may order a trial with a jury* whose verdict shall have the same effect as if trial by jury had been a matter of right.") (emphasis added).

10. In *Vaughn v. Veasey*, 50 Del. 133, 125 A.2d 251 (1956), a statute at issue provided "the court shall determine [whether] the trespass [was] willful and award damages accordingly." The Dela-

ware court rejected the argument that the statute mandated that a judge determine liability. 50 Del. at 138, 125 A.2d at 253. Even though the same statute also contained a provision allowing a "court" to enter default judgment, in order to save the statute from unconstitutionality, the Delaware court interpreted "court" to mean a jury trial. *Id.* The City also cites *Bishop v. Hybud Equipment Corp.*, 42 Ohio App.3d 55, 57, 536 N.E.2d 694, 696 (1988) ("court" can mean either judge or jury); *Peterson v. Fargo–Moorhead St. Ry. Co.*, 37 N.D. 440, 461, 164 N.W. 42, 49 (1917) (both judge and jury constitute a "court"); *People v. Grifenhagen*, 154 N.Y.S. 965, 970 (1915) ("court," as distinguished from a judge, may consist of a judge and jury); *Houston Belt & Terminal Ry. Co. v. Lynch*, 221 S.W. 959 (Tex. Com.App.1920) ("court" includes judge and jury).

11. The City cites HRS § 635–12(a) (1985) ("issues shall be determined by the judge without the intervention of a jury"); HRS § 712A–12(4) (Supp.1992) ("hearing shall be held by the court without a jury"); and HRS § 667–1 (1985) ("without the intervention of a jury").

right to a jury trial on the issue of liability under HRS § 92E–11(c).

Hawai'i's Constitution provides in part:

> In suits *at common law* where the value in controversy shall exceed five thousand dollars, the right of trial by jury shall be preserved.

Haw. Const., art. I, § 13 (as amended in 1988) (emphasis added). In addition, Hawai'i Rules of Civil Procedure (HRCP) 38 provides in part:

> (a) **Right Preserved.** The right of trial by jury as given by the Constitution or a statute of the State or the United States shall be preserved to the parties inviolate.

"[T]he right to jury trial [is] inviolate in the absence of an unequivocal and clear showing of a waiver of such right either by express or implied conduct." *Lii v. Sida of Hawaii, Inc.*, 53 Haw. 353, 355, 372, 493 P.2d 1032, 1034, *cert. denied*, 408 U.S. 930, 92 S.Ct. 2493, 33 L.Ed.2d 342, *reh'g denied*, 409 U.S. 903, 93 S.Ct. 107, 34 L.Ed.2d 166 (1972).

The dispositive issue here is whether a statutory cause of action, such as a suit under HRS § 92E–11(c), is a "suit at common law" under the Hawai'i Constitution. No Hawai'i case has ruled precisely on this point. However, because article I, § 13 is patterned after the seventh amendment to the United States Constitution, this court may look to interpretations of the seventh amendment.[12] *Harada v. Burns*, 50 Haw. 528, 532, 588, 445 P.2d 376, 380 (1968).

■ The test to determine whether a suit is "at common law" is not whether the cause of action is statutory, but whether the cause of action seeks "legal" or "equitable" relief.

In other words, courts look to the nature of the remedy to determine whether a jury trial is warranted. *Wooddell v. International Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, ——, 112 S.Ct. 494, 497, 116 L.Ed.2d 419 (1992). Historically, actions in equity were heard by a judge; actions at law were triable by a jury. *Tull v. United States*, 481 U.S. 412, 417, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987); *see also Curtis v. Loether*, 415 U.S. 189, 193–195, 94 S.Ct. 1005, 1007–1009, 39 L.Ed.2d 260 (1974) (if action seeks "legal" relief, then the seventh amendment provides for the right to a jury trial).

In *Board of Directors of the Ass'n of Apt. Owners v. Regency Tower Venture*, 2 Haw. App. 506, 513, 635 P.2d 244, 249 (1981), although one count of the complaint used the words "unjust enrichment" and "mistake," the Intermediate Court of Appeals held that, because money damages were sought, the claim was triable by jury as a matter of right. *Id.* at 512–13, 635 P.2d at 249–50. Applying the test to this action, Mehau sought only monetary damages based upon invasion of privacy. No equitable relief was sought.

■ Several recent United States Supreme Court decisions confirm that, in determining a party's right to a jury trial, the primary focus is on the nature of the remedy and not whether the statutory action is analogous to a common law action.[13] *See e.g., Wooddell*, —— U.S. at ——, 112 S.Ct. at 497; *Tull*, 481 U.S. at 421, 107 S.Ct. at 1837 ("We reiterate our previously expressed view that characterizing the relief sought is '[m]ore important' than finding a precisely analogous common-law cause of action in determining

---

12. The seventh amendment to the United States Constitution reads in relevant part: "In [s]uits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...."

13. Mehau relies on a dissent from a recent Supreme Court case involving the right to trial by jury, *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 591, 110 S.Ct. 1339, 1358, 108 L.Ed.2d 519 (1990) (Kennedy, J. dissenting), wherein Justice Kennedy wrote:

> we have not adopted a rule that a statutory action permitting damages is by definition more analogous to a legal action than to any

equitable suit. In each case, we look to the remedy to determine whether, taken with other factors, it places an action within the definition of "[s]uits at common law."

The majority in *Terry*, however, reaffirmed that the inquiry is to " '[f]irst, ... compare the statutory action to 18th–century actions brought in the courts of England prior to the merger of law and equity. Second, ... examine the remedy sought and determine whether it is legal or equitable....' The second inquiry is the more important in our analysis." 494 U.S. at 565, 110 S.Ct. at 1345 (citations omitted) (footnote omitted).

whether the Seventh Amendment guarantees a jury trial.") (citing *Curtis*, 415 U.S. at 196, 94 S.Ct. at 1009). In *Curtis*, the United States Supreme Court stated:

> "The phrase 'common law,' found in [the seventh amendment], is used in contradistinction to equity, and admiralty, and maritime jurisprudence.... By *common law*, [the Framers of the amendment] meant ... not merely suits which the *common* law recognized among its old and settled proceedings, but suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.... In a just sense, the amendment then may well be construed to embrace all suits which are not of equity and admiralty jurisdiction, whatever might be the peculiar form they may assume to settle legal rights."

*Curtis*, 415 U.S. at 193, 94 S.Ct. at 1007–1008 (quoting *Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 446–47, 7 L.Ed. 732 (1830) (emphasis in original)). The Court expressly held that "[t]he Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." *Id.* 415 U.S. at 194, 94 S.Ct. at 1008. The statute at issue in *Curtis* provided for compensatory damages for housing discrimination based upon race. The Court found that the action "sounds basically in tort—the statute merely defines a new legal duty[.]" *Id.* at 195, 94 S.Ct. at 1009.

■ Furthermore, the *Restatement (Second) of Torts* §§ 652A–E (1977), recognizes a tort of invasion of privacy. The Restatement categorizes the tort into four types: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to the other's private life; and (4) false light. "As it has developed in the courts, the invasion of the right of privacy has been a complex of four distinct wrongs." *Restatement (Second) of Torts* § 652A comment b. Thus, invasion of privacy, as a general tort action,

should be construed as a "suit at common law."

Mehau contends that chapter 92E resembles an action in equity. Section 92E–11(b) provides that "the court may order the agency to correct or amend the complainant's personal record, to require any other agency action, or to enjoin such agency from improper actions as the court may deem necessary and appropriate to render substantial relief." However, section 92E–11(c), which provides for damages, is at issue here. It is well-settled that a jury question goes to the particular issue rather than the overall case. *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970). Therefore, although a judge would probably decide an action under subsection (b), a jury decides an action under subsection (c), absent a stipulation to the contrary.

Accordingly, we hold that a statutory cause of action, such as a suit under HRS § 92E–11(c), is a "suit at common law" under the Hawai'i Constitution. Therefore, the City has a constitutional right to a jury trial in suits brought under that section. Consequently, the trial court was correct in allowing the jury to decide the liability question, and a new trial is not warranted.

*C. Mehau's claimed right to non-jury trial was waived.*

■ Initially, we note that there is no constitutional right to a non-jury trial under either the Hawai'i or United States Constitutions. *Regency Tower*, 2 Haw.App. at 512, 635 P.2d at 249 (citations omitted); 9 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2317 (1971). Therefore, any right to a bench trial must be conferred by statute.

Although we hold today that an action under HRS § 92E–11(c) is triable by jury, we believe it instructive to discuss Mehau's argument which is premised upon his position that a claim under HRS § 92E–11(c) is triable by a judge. Mehau argues that he only demanded a jury trial on "issues so triable" and maintains that a claim under HRS § 92E–11(c) is not "so triable;" therefore, "[his] demand for jury trial did not

encompass a demand for trial by jury on the Chapter 92E liability claims."

■ In *Kimball v. Lincoln*, 72 Haw. 117, 809 P.2d 1130 (1991), we held that:

where there are issues which are triable of right by a jury and other issues which are not so triable, all issues should be tried by the jury unless, in accordance with the rule, the parties stipulate orally or in writing that some issues are not to be tried by a jury, or the court, on the record, makes a finding that there are certain issues which are not triable as of right by the jury.

*Id.* at 118, 809 P.2d at 1131.

■ Although both Mehau and the City timely filed demands for jury trial, "it is well settled in this jurisdiction that when either of the litigating parties properly demanded jury, it fixed the status of the case and the other party was not required to file his [or her] own demand." *Lee Wing Chau v. Nagai*, 44 Haw. 290, 292, 353 P.2d 998, 1000 (1960). Moreover, HRCP 38(d) provides in part, that "[a] demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties." Therefore, neither Mehau nor the City could have withdrawn their demand for jury trial without the consent of the other.

■ Additionally, "[a]fter a case has been assigned the status of a jury trial, it can be changed to a jury-waived status only by a written stipulation or by an oral stipulation made in open court and entered in the record." *Lee Wing Chau*, 44 Haw. at 292–93, 353 P.2d at 1000.

Mehau relies on the fact that he moved for a non-jury trial on the same day that the common law counts of libel, slander, defamation, and false light were withdrawn. However, such withdrawal was made nearly two and a half months after the trial had commenced.

■ The City convincingly argues that it would be prejudiced if the trial's status, that is, jury or bench trial, was changed after the beginning of trial. Persuasive authority holds that it would be fundamentally unfair to change a trial's status from a jury to non-jury trial, especially after the close of evidence, because strategies and tactics differ depending on whether a judge or jury will render the decision. *See Pradier v. Elespuru*, 641 F.2d 808, 811 (9th Cir.1981) ("The parties are entitled to know at the outset of the trial whether the decision will be made by the judge or the jury"); *Hildebrand v. Board of Trustees*, 607 F.2d 705, 710 (6th Cir.1979) ("To convert a trial from jury trial to a bench trial (or vice-versa) in the middle of the proceedings is to interfere with counsel's presentation of their case and, quite possibly, to prejudice one side or the other"). Therefore, if Mehau believed that a judge was required to determine liability on the 92E–11(c) issue, he should have so moved before the presentation of evidence, not *after* the close of evidence.

Thus, we conclude that even if Mehau had a statutory right to a non-jury trial, it was waived.

### D. *The motion for JNOV or new trial was properly denied.*

As previously noted, the trial court granted Mehau a new trial against Reed, finding that the jury's verdict was against the weight of the evidence. The court, however, refused to grant JNOV or a new trial as to the City. Mehau argues that the trial court's reasoning set forth in its decision granting a new trial to Reed necessarily implies that Mehau is entitled to JNOV or a new trial as to the City. We disagree.

■ We review denials of motions for JNOV *de novo* to determine if the claims were supported by substantial evidence. *See Erickson v. Pierce County*, 960 F.2d 801, 804 (9th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 815, 121 L.Ed.2d 687 (1992). A JNOV may be granted only when there can be but one reasonable conclusion as to the proper judgment. *Guaschino v. Eucalyptus, Inc.*, 3 Haw.App. 632, 643, 658 P.2d 888, 896 (1983) (citations omitted). Denial of a motion for a new trial is reviewed on appeal under the abuse of discretion standard. *Harkins v. Ikeda*, 57 Haw. 378, 557 P.2d 788 (1976). The jury's verdict need only be supported by substantial evidence, more than a scintilla, to

be sustained by an appellate court. *Kalilikane v. McCravey* 69 Haw. 145, 152, 737 P.2d 862, 867 (1987).

■ Under HRS §§ 92E–4 and –11, Mehau had to establish, as to both Reed and the City, that (1) an "agency" [14] (2) knowingly or intentionally (3) disclosed or authorized disclosure (4) of a personal record (5) by any means of communication (6) to any person other than the individual to whom the personal record pertained and (7) the disclosure did not fall within a statutory exemption.

The trial court ruled that the City prosecutor's office is an "agency" for purposes of chapter 92E, even though it is not listed as part of the executive branch. It also found that Reed was an "agency" because he was an employee of the prosecutor's office. In granting a new trial as to Reed, the court reasoned that "[i]t is not a defense that the 1985 Kiwanis Club speech by Defendant Reed allegedly was made during his lunch hour" and that "[d]efendant Reed also cannot hide behind the assertion that he made the speech as a political candidate. He obtained the information as an employee and was under a continuing duty not to disclose it."

Importantly, although the City itself is not included within HRS § 92E–1's definition of "agency," under the *respondeat superior* theory, the City could be liable through its employees acting within the scope of their employment. Mehau proceeded on this theory and submitted appropriate jury instructions, which the court accepted and conveyed to the jury.

Mehau argues that when the trial court found Reed was an "agency," it implicitly found Reed was working within the scope of employment when he obtained *and* disclosed Firebird/FBI documents; therefore, the City

is liable. Mehau contends that "but for" Reed's employment, Reed would not have been privy to the information contained in the Firebird/FBI documents nor would he have been in a position to disclose the contents of the records. In support, Mehau cites *Lucas v. Liggett & Myers Tobacco Co.*, 50 Haw. 477, 506, 442 P.2d 460 (1968) (an employer is liable for the acts of its employee if the employer places the employee in a position that, by virtue of that position, enables the employee to injure a third party).

■ The City counters by emphasizing that there is no government liability under HRS § 92E if the employee commits a violation while working outside the scope of employment. If, as in this case, an individual employee discloses records or otherwise violates the chapter while outside the scope of employment, the employee has potential personal liability.[15] In this regard, the trial court found that there was sufficient credible evidence for the jury to find that Reed was not acting within the scope of employment when he disclosed the information about Mehau during the Kiwanis Club speech.

Conduct is within the scope of employment if:

1) it is of the kind he or she is employed to perform,

2) it occurs substantially within the authorized time and space limits, and

3) it is actuated at least in part, by a purpose to serve the employer.

*Henderson v. Professional Coatings Corp.*, 72 Haw. 387, 392, 819 P.2d 84, 88 (1991) (citations omitted). None of these factors are met in this case. Arguably, Reed's speech pertained to organized crime. However, Reed delivered the speech as a political candidate and announced a disclaimer before he began.[16] His candidacy was not part of

14. As noted earlier, an "agency" was defined as "every office, officer, employee, department, division, bureau, authority, board, commission, or other entity of the executive branch of the State or of each county[.]" HRS § 92E–1 (1985).

15. According to the definition of "agency" found in HRS § 92E–1, a public employee could be deemed an "agency," thus imposing individual liability. This imposition of personal liability was repealed by the legislature so that "public employees will be free to act according to the

intent of the law without the defensive posture which was perhaps a consequence of the existing penalty provisions. This bill provides that actions will proceed against agencies and not individual employees." Hse.Conf.Comm.Rep. No. 112–88, 1988 House Journal, at 818.

16. Reed testified that he began his speech by explaining, "I know you folks know me as Prosecutor Marsland's chief assistant ... but I was invited here today as a congressional candidate. So I'm speaking to you today as a congressional

his job and he delivered the speech during his lunch hour. Additionally, Marsland testified that he did not review or ratify the speech in any manner. Marsland required Reed to conduct his campaign separate from his duties in the prosecutor's office. Finally, Reed had no purpose to serve his employer when running for office and making the speech.

*Liggett & Myers Tobacco Co.* is distinguishable. Although the *Liggett & Myers* court imposed *respondeat superior* liability on an employer for the criminal acts of its employee, the employee committed the criminal acts while acting in his capacity as an agent for the employer. The court relied on the *Restatement (Second) of Agency* § 262, which makes a master liable for misrepresentations of one "apparently acting for him." *Liggett & Myers*, 50 Haw. at 482, 442 P.2d at 463.

In response, Mehau stresses the language of the trial court's decision, arguing that the trial judge concluded that liability under chapter 92E is imposed from the moment the personal records are obtained. Although the trial court did decide that Reed "obtained the information [the Firebird/FBI documents] as an employee and was under a continuing duty not to disclose it," such a finding correctly implied that the duty is breached upon *disclosure*, not upon the mere obtaining of the records. Thus, Mehau's conclusions are without merit.

▇ Citing *Bowyer v. United States Department of Air Force*, 804 F.2d 428 (7th Cir.1986) (in the context of the Federal Privacy Act, 5 U.S.C. § 552a, agency "use" qualifies as maintenance), Mehau also claims that improper "maintenance" on the part of the City is sufficient to impose liability. Indeed, HRS § 92E–11 provides that the award of "actual damages sustained by complainant as a result of the failure of the agency to properly *maintain* the personal record." However, at trial, Mehau proceeded under both HRS §§ 92E–4 and –11 on the theory that Reed's *disclosure* of the information in the speech rendered Reed or the City

liable. Paragraph 10 of Mehau's complaint alleges that

> In his speech to the Honolulu Kiwanis Club, REED purported to *disclose* information from government reports.... The reports, if they existed, were obtained by REED in the course and scope of his employment for Defendant CITY AND COUNTY OF HONOLULU. REED maliciously and intentionally *disclosed* information.... In *disclosing* this information to the Kiwanis Club and to the public at large, REED violated the Hawai'i Fair Information Practices Act, § 92E, *Hawai'i Revised Statutes* and is strictly liable to Plaintiffs.

(Emphasis added.) Mehau's own jury instruction No. 44 explained "you must find that: (1) an agency; (2) knowingly or intentionally disclosed or authorized disclosure." Mehau's instruction No. 21 instructed: "The [City] can act only through its employees. Any act or omission of an employee within the scope of his employment is the act or omission of the [City.]" No instruction was given, nor did Mehau request one, regarding liability for improper *maintenance*. Clearly, Mehau was not asserting that improper maintenance by a defendant caused a violation of chapter 92E. Although Mehau now attempts to assert improper maintenance as a theory, a litigant cannot prevail on an appeal by asserting a different claim for relief than that asserted at trial.

Furthermore, in *Bowyer*, the plaintiff's theory of liability was that he was improperly blacklisted and that the agency unlawfully maintained and used records against him by failing to rehire him. In that case, the defendant was improperly "using and maintaining" records in the scope of employment. No disclosure to the public was involved. Here, the City apparently did "maintain" records through Reed while acting in the scope of his employment. However, if there was any improper disclosure by Reed, such disclosure was done outside the scope of his employment with the City.

Our review of the record in this case does not indicate that the jury's finding of no liability as to the City was against the weight of the evidence. We, therefore, hold that under HRS § 92E–11(c), the City could be

candidate and as a private citizen. So I want to

stress that before I begin the text of my speech."

liable only for acts committed by agents acting within the scope of their employment with the City; and thus, the trial court's decisions as to Reed and the City were not inconsistent.

### III. CONCLUSION

Based on the foregoing, we affirm the trial court's rulings (1) submitting the question of liability under HRS § 92E–11(c) to the jury, and (2) denying Mehau's motion for JNOV or a new trial as to the City.