**Electronically Filed
Supreme Court
SCAP-14-0000889
09-JUN-2016
08:35 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

PEER NEWS LLC dba CIVIL BEAT,
Plaintiff-Appellee,

vs.

CITY & COUNTY OF HONOLULU and HONOLULU POLICE DEPARTMENT,
Defendants-Appellees,

and

STATE OF HAWAI'I ORGANIZATION OF POLICE OFFICERS,
Intervenor-Defendant-Appellant.

SCAP-14-0000889

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-14-0000889; CIV. NO. 13-1-2981-11)

JUNE 9, 2016

RECKTENWALD, C.J., NAKAYAMA, AND WILSON, JJ.,
CIRCUIT JUDGE CRABTREE, IN PLACE OF McKENNA, J., RECUSED,
WITH POLLACK, J., CONCURRING SEPARATELY

OPINION OF THE COURT BY RECKTENWALD, C.J.

This case arises out of Civil Beat's request for the

disciplinary records of twelve Honolulu Police Department (HPD)

officers who were suspended for at least twenty days for various types of misconduct.  HPD denied the request, and Civil Beat filed suit.  The State of Hawaiʻi Organization of Police Officers (SHOPO) intervened as a defendant.  The circuit court[1] found in favor of Civil Beat, ordering HPD to disclose the records, and SHOPO appealed.

The circuit court based its conclusion on this court's 1996 decision, State of Hawaiʻi Organization of Police Officers v. Soc'y of Professional Journalists - University of Hawaiʻi Chapter, 83 Hawaiʻi 378, 927 P.2d 386 (1996) (hereinafter SHOPO v. SPJ), and on Office of Information Practices (OIP) Opinion Letter No. 97-01 (Feb. 21, 1997).  In SHOPO v. SPJ, this court held that under a prior version of Hawaii's Uniform Information Practices Act (UIPA), police officers had no privacy interest in their disciplinary suspension records, and thus HPD must disclose the records upon request.  The OIP, in Opinion Letter No. 97-01, ruled that even though the legislature amended the UIPA in Act 242 to recognize a "significant privacy interest" in police officers' disciplinary suspension records, SHOPO v. SPJ still mandated disclosure of such records.  Thus, the circuit court concluded that police officers have a "non-existent" privacy interest in their disciplinary suspension records.

---

[1] The Honorable Karl K. Sakamoto presided.

We hold that SHOPO v. SPJ is not controlling.  The legislature's amendments to the UIPA in Act 242, the plain language of the UIPA, and its legislative history demonstrate that police officers have a significant privacy interest in their disciplinary suspension records.  Disclosure of the records is appropriate only when the public interest in access to the records outweighs this privacy interest.

The records requested by Civil Beat here involve cases of serious misconduct that reasonably could call into question the police officers' trustworthiness or fitness to perform their public duties.  However, we cannot determine whether disclosure is appropriate given the limited factual record in this case.  We therefore vacate the circuit court's judgment and remand to that court so it can review the records to determine whether the public interest outweighs the officers' significant privacy interests.

## I.  Background

### A.   Civil Beat's request for information

On October 4, 2013, Civil Beat sent a letter to the HPD Custodian of Records requesting records of disciplinary actions of twelve different police officers who were suspended for misconduct between 2003 and 2012.  All of these disciplinary actions resulted in employee suspensions of at least twenty days.

The suspensions involved the following types of misconduct:

1.  Violation of HPD's electric gun policy and utilized malicious force (twenty day suspension);

2.  Was untruthful during an investigation. Failed to maintain the confidentiality of the investigation (twenty day suspension);

3.  Falsified a police report and was untruthful during the investigation (seventy-seven day suspension);

4.  Hindered a federal investigation (six hundred twenty-six day suspension);

5.  Pled guilty to criminal charges (twenty day suspension);

6.  Fled the scene of a motor vehicle collision, failed to report the collision, and provided false information on the police report (twenty day suspension);

7.  Falsified information in a motor vehicle collision. Failed to remain impartial during a motor vehicle collision investigation. Was untruthful during an administrative investigation (twenty day suspension);

8.  Submitted a falsified report and fabricated the facts regarding the probable cause to conduct a traffic stop (twenty day suspension);

9.  Willfully used physical force against another employee causing injury (twenty day suspension);

10. Involved in a motor vehicle collision while under the influence of alcohol. Fled the scene and falsely reported the vehicle stolen. Failed to update personal information (twenty day suspension);

11. Falsified police reports and expense vouchers. Misappropriated expense funds. Failed to submit evidence. Participated in illegal gambling. Was untruthful (thirty day suspension);

12. Assaulted another person and harassed the officer who was investigating the incident (twenty day

suspension).[2]

---

[2]     The information regarding the incidents of misconduct Civil Beat listed in the letter was taken from "HPD's annual disclosure of misconduct to the State legislature in accordance with HRS § 52D-3.5."  This information is available to the public but includes no more detail than the brief summary of the misconduct listed here.

HRS § 52D-3.5 (2014) provides, in relevant part:

(a) The chief of each county police department shall submit to the legislature no later than January 31 of each year an annual report of misconduct incidents that resulted in suspension or discharge of a police officer.

. . . .

(b) The report shall:

(1) Summarize the facts and the nature of the misconduct for each incident;
(2) Specify the disciplinary action imposed for each incident;
(3) Identify any other incident in the annual report committed by the same police officer; and
(4) State whether the highest nonjudicial grievance adjustment procedure timely invoked by the police officer or the police officer's representative has concluded:
(A) If the highest nonjudicial grievance adjustment procedure has concluded, the report shall state:
(i) Whether the incident concerns conduct punishable as a crime, and if so, describe the county police department's findings of fact and conclusions of law concerning the criminal conduct; and
(ii) Whether the county police department notified the respective county prosecuting attorney of the incident; or
(B) If the highest nonjudicial grievance adjustment procedure has not concluded, the report shall state the current stage of the nonjudicial grievance adjustment procedure as of the end of the reporting period.

. . . .

(e) For any misconduct incident reported pursuant to

(continued...)

Civil Beat requested the following information for each instance of misconduct resulting in a suspension:

> For each incident, if the highest non-judicial grievance adjustment procedure timely invoked by the employee or the employee's representative has concluded and thirty days has elapsed following a written decision sustaining the suspension after that procedure, [Civil Beat] specifically requests a document or documents sufficient to provide the following information:
>
> • The employee's name;
> • The nature of the employment-related misconduct;
> • HPD's summary of the allegations of misconduct;
> • Findings of fact and conclusions of law; and
> • The disciplinary action taken by the agency.
>
> For all other incidents, [Civil Beat] specifically requests a document or documents sufficient to show the date(s) that the employee or the employee's representative invoked each step in the non-judicial grievance adjustment procedure. In addition, if the non-judicial adjustment procedure terminated for a reason other than a decision sustaining the suspension, [Civil Beat] specifically requests a document or documents sufficient to summarize the reason that the procedure concluded and to show the date that the procedure concluded. For documents responsive to this paragraph, [Civil Beat] agrees that HPD may redact the employee's name and other information that would disclose the employee's identity.

---

[2](...continued)
this section and subject to subsection (b)(4)(B), the chief of each county police department shall provide updated information in each successive annual report, until the highest nonjudicial grievance adjustment procedure timely invoked by the police officer has concluded. In each successive annual report, the updated information shall reference where the incident appeared in the prior annual report. For any incident resolved without disciplinary action after the conclusion of the nonjudicial grievance adjustment procedure, the chief of each county police department shall summarize the basis for not imposing disciplinary action.

Thus, for cases where the highest grievance procedure timely invoked by the employee has concluded, and thirty days has passed following a written decision sustaining the employees' suspensions, Civil Beat requested information that included the employees' names. For all other cases, Civil Beat did not request the employees' names.

HPD denied Civil Beat's request in its entirety. To justify its denial, HPD cited to HRS § 92F-13(1)[3] and HRS § 92F-14,[4] and stated that Civil Beat's request was an "[u]nwarranted

---

[3] HRS § 92F-13 provides: "This part shall not require disclosure of: (1) Government records which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy[.]"

[4] The version of HRS § 92F-14 as amended by Act 242, which was in effect at the time Civil Beat made its request provided, in pertinent part:

> (a) Disclosure of a government record shall not constitute a clearly unwarranted invasion of personal privacy if the public interest in disclosure outweighs the privacy interest of the individual.
>
> (b) The following are examples of information in which the individual has a significant privacy interest:
>
> . . . .
>
> (4) Information in an agency's personnel file, or applications, nominations, recommendations, or proposals for public employment or appointment to a governmental position, except:
>
> . . .
>
> > (B) The following information related to employment misconduct that results in an employee's suspension or discharge:
> >
> > > (i) The name of the employee;
> > > (ii) The nature of the employment related
> > > (continued...)

7

invasion of privacy," and that the "[i]ncidents did not result in discharge."

## B.    Prior proceedings

On November 7, 2013, Civil Beat filed a complaint in the circuit court seeking an order directing HPD to disclose all of the information Civil Beat sought in its October 4, 2013 letter.  Civil Beat filed a motion for summary judgment (MSJ), arguing that after this court's decision in SHOPO v. SPJ, police officers have no constitutional privacy interest in their disciplinary records where the officers were suspended but not discharged.  Civil Beat further argued that UIPA permits

---

(...continued)

> misconduct;
> (iii) The agency's summary of the
> allegations of misconduct;
> (iv) Findings of fact and conclusions of
> law; and
> (v) The disciplinary action taken by the
> agency;
>
> when the following has occurred: the highest
> nonjudicial grievance adjustment procedure
> timely invoked by the employee or the employee's
> representative has concluded; a written decision
> sustaining the suspension or discharge has been
> issued after this procedure; and thirty calendar
> days have elapsed following the issuance of the
> decision; provided that this subparagraph shall
> not apply to a county police department officer
> except in a case which results in the discharge
> of the officer[.]

HRS § 92F-14 (Supp. 1996).

HRS § 92F-14 was amended in 2004 and 2014, but these subsequent amendments are not relevant to this appeal.  See 2004 Haw Sess. Laws Act 92, § 4 at 368; 2014 Haw. Sess. Laws Act 121, § 2 at 334-35.

8

withholding government records on the grounds of personal privacy only if the individual has a <u>constitutionally</u> protected right of privacy.  Thus, according to Civil Beat, HPD police officers have no privacy interest in their records of disciplinary suspensions.

Civil Beat also relied on a formal opinion of the OIP, Opinion Letter No. 97-01. In OIP Opinion Letter No. 97-01, the OIP first concluded that when the legislature amended the UIPA by enacting Act 242 in 1995, it intended "to balance the competing privacy and public interests in favor of keeping confidential information about suspended officers."  <u>Id.</u> at 6.  The OIP went on, however, to conclude that this court's decision in <u>SHOPO v. SPJ</u> "erodes the significant weight assigned by the Legislature to the suspended officer's privacy interest, as set out in Act 242" such that "only a 'scintilla' of public interest is enough to overcome this privacy interest in the balancing test."  <u>Id.</u> at 8. The OIP also noted that arguably, the legislature was free to create a significant privacy interest in police officers' records of disciplinary suspensions, even if no constitutional privacy right existed, but that even if this were true, the interests still need to be weighed, and this court's ruling in <u>SHOPO v. SPJ</u> "tips the balance heavily toward finding that the public has a strong countervailing interest about suspended police officers." <u>Id.</u> at 8-9.  The OIP therefore concluded:

9

> Whether one finds that SHOPO eliminates the Legislature's finding of a significant privacy interest or whether the Legislature has the power to create the right, the result is the same--disclosure of information about suspended police officers cannot be found to constitute a clearly unwarranted invasion of personal privacy under the UIPA.

Id. at 9.

In its MSJ, Civil Beat argued that OIP's analysis was correct based on a plain reading of the UIPA, and that even if the UIPA is ambiguous, OIP's conclusion is entitled to deference.

In the alternative, Civil Beat argued that even if the UIPA does recognize a broader right of privacy than the constitution, the public interest in disclosure nevertheless outweighs the individual privacy interest. Civil Beat argued that the public has an overwhelming interest in the disclosure of disciplinary records regarding egregious misconduct by police officers because:

> Instances of misconduct of a police officer while on the job are not private, intimate, personal details of the officer's life . . . . They are matters with which the public has a right to concern itself. . . . If the off duty acts of a police officer bear upon his or her fitness to perform public duty or if the activities reported in the records involve the performance of a public duty, then the interest of the individual in "personal privacy" is to be given slight weight in the balancing test and the appropriate concern of the public as to the proper performance of public duty is to be given great weight. In such situations privacy considerations are overwhelmed by public accountability.

(Quoting Cowles Publ'g v. State Patrol, 748 P.2d 597, 605 (Wash.

10

1988)).[5]

Thus, according to Civil Beat, even if police officers have a "significant privacy interest" in their disciplinary suspension records, this interest must nonetheless be weighed against the public interest in disclosure, and in this case, this public interest outweighs the officers' privacy interest.

On January 9, 2014, the circuit court granted SHOPO's motion to intervene as a defendant. HPD and SHOPO each filed a memorandum in opposition to Civil Beat's MSJ.

HPD argued that the plain language of HRS § 92F-14(b), as amended by Act 242, indicated that an HPD officer has a significant privacy interest in records related to employment misconduct where the officer was suspended, but not discharged. HPD asserted that the "legislative history of Act 242 shows that the legislature intended to conduct the balancing itself and conclude "as a matter of public policy that the privacy of the individual outweighs the public interest in disclosure with respect to the information sought by [Civil Beat] in this case."

In SHOPO's memorandum in opposition to Civil Beat's MSJ, SHOPO made similar arguments to HPD's. SHOPO argued that because HRS § 92F-14 recognizes a "significant privacy interest"

---

[5] This same language was also quoted approvingly by this court in SHOPO. 83 Hawai'i at 399, 927 P.2d at 407.

in information related to police officer misconduct not resulting in discharge, it "plainly and unambiguously exempts from disclosure the disciplinary records of county police officers who have not been discharged."

The circuit court granted Civil Beat's MSJ, finding as follows:

> Article I, Section 6 of the Hawaiʻi Constitution does not recognize a protected privacy interest in police misconduct resulting in suspension or discharge.  The court interpreted Article I, Section 6 in light of the Supreme Court of Hawaii's decision [in SHOPO].  The Supreme Court of Hawaiʻi determined that police officers do not have a protected privacy interest in records of police misconduct that lead to suspension or discharge.
>
> . . . .
>
> The supreme court also stated that "information regarding charges of misconduct by police officers, in their capacities as such, that have been sustained after investigation and that have resulted in suspension or discharge is not 'highly personal and intimate information' and, therefore, is not within the protection of Hawaiʻi's constitutional right of privacy."  The court also went on to state:  "The information that must be disclosed pursuant [to] HRS § 92F-14(b)(4)(B) regarding a public employee's employment-related misconduct and resulting discipline, is not 'highly personal and intimate information' and is, therefore, not within the scope of Hawaiʻi's constitutional right of privacy."
>
> The UIPA cannot recognize a protected privacy interest in police officer misconduct because to do so would be to directly contravene the provision it implements, which is Article I, Section 6.  Under Article I, Section 6, police officers have no protected privacy interest regarding on-duty misconduct that results in suspension or discharge, and the UIPA implements Article I, Section 6, as given in the SHOPO decision, which states "[t]he UIPA, and the challenged amendment by Act 191, implements article I, section 6 of the Hawaiʻi Constitution . . . ."  Thus, reading that language, the court concludes under SHOPO as [sic] there is no

12

protected privacy interests regarding on-duty misconduct by police officers, therefore, public access interest would outweigh non-existent privacy interests in on-duty police misconduct.

The court believes that this is supported in part on three grounds:

1. Looking at the purpose of the UIPA, which is geared towards disclosure;

2. That the Hawai'i Supreme Court certainly recognized that Act 242 would require only limited disclosure to those police officers that were discharged;

3. That the court finds that the State of Hawai'i [OIP] decision, Opinion Letter No. 97-1, was not erroneous.

. . . .

[L]ooking at the SHOPO decision, it again appears to recognize that, there, Act 242 was about to limit disclosure of records just to discharged officers.  The SHOPO court did begin its analysis centered specifically at Act 191, but then the supreme court went further in the analysis to consider, moreover, the history of Article I, Section 6 of the Hawai'i Constitution and went in-depth in a constitutional analysis of police misconduct. Accordingly, the Supreme Court of Hawai'i recognized the impact of Act 242 and chose to additionally and separately address its shortcomings under Article I, Section 6.

. . . .

Based on the record and the analysis set forth above, Plaintiff's [MSJ] is GRANTED.  Defendants are hereby ORDERED to open public inspection and copying by Plaintiff the requested records of twelve police officers identified in the October 4, 2013 letter.

(Internal citation omitted).

SHOPO filed a notice of appeal, and on February 10,

13

2015, this court granted Civil Beat's application for transfer.[6]

In its opening brief, SHOPO presents three points of error:

> 1. Whether the Circuit Court erred when it granted Plaintiff-Appellee Civil Beat's [MSJ] by ruling that Defendant-Appellee City was required to disclose the disciplinary information of the 12 police officers who were not discharged.
>
> 2. Whether the Circuit Court erred when it found that police officers that had not been discharged from their employment had no privacy interests in their disciplinary records in reliance of SHOPO v. SPJ, 83 Haw. 378, 927 P.2d 386 (1996).
>
> 3. Whether the Circuit Court erred when it found that OIP Op. 97-1 was not palpably erroneous.

## II.  Standards of Review

### A.  Summary judgment

"On appeal, the grant or denial of summary judgment is reviewed de novo."  Lales v. Wholesale Motors Co., 133 Hawaiʻi 332, 343, 328 P.3d 341, 352 (2014) (citing First Ins. Co. of Haw. v. A & B Props., Inc., 126 Hawaiʻi 406, 413, 271 P.3d 1165, 1172 (2012)).  Furthermore,

> summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.  The evidence must be

---

[6]  The City and County of Honolulu and HPD filed a notice stating that neither party was taking a position in the appeal.

14

> viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

Id. (citing First Ins. Co. of Haw., 126 Hawai'i at 413-14, 271 P.3d at 1172-73).

## B.    Statutory interpretation

> The interpretation of a statute is a question of law reviewable de novo. When construing a statute, this court's foremost obligation is to be obtained primarily from the language contained in the statute itself. Where the statutory language is plain and unambiguous, this court's sole duty is to give effect to its plain and obvious meaning.
>
> Implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself; however, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

McLaren v. Paradise Inn Hawai'i LLC, 132 Hawai'i 320, 327-28, 321 P.3d 671, 678-79 (2014) (citations omitted).

> Further, this court has stated that an appellate court
>
> generally reviews questions of statutory interpretation de novo, but, in the case of . . . ambiguous statutory language, the applicable standard of review regarding an agency's interpretation of its own governing statute requires this court to defer to the agency's expertise and to follow the agency's construction of the statute unless that construction is palpably erroneous[.]

Gillan v. Gov't Emps. Ins. Co., 119 Hawai'i 109, 114, 194 P.3d 1071, 1076 (2008) (citing Vail v. Employees' Ret. Sys., 75 Haw. 42, 66, 856 P.2d 1227, 1240 (1993)) (citation, quotation marks, and brackets omitted).

### III.  Discussion

As explained below, the circuit court incorrectly concluded that police officers have a "non-existent" privacy interest in their disciplinary suspension records.  SHOPO is correct that SHOPO v. SPJ is not dispositive because in Act 242, the legislature recognized a privacy interest in police officers' disciplinary records that was not applicable in SHOPO v. SPJ. Thus, Civil Beat cannot rely on the balancing conducted by this court in SHOPO v. SPJ.  However, the language and legislative history of Act 242 indicate that even after a significant privacy interest is found, that interest must be weighed against the public interest in disclosure.  Therefore, this case must be remanded to the circuit court to balance the public and privacy interests at stake to determine whether disclosure is appropriate.

A.  **Act 242 created a "significant" personal privacy interest in records of disciplinary suspension, which is broader than the right of privacy recognized in SHOPO v. SPJ**

SHOPO first argues that the circuit court erred in finding that police officers had a "'non-existent privacy interest' in their disciplinary records," because this finding is contrary to the language of Act 242.  Specifically, SHOPO asserts that HRS § 92F-14(b)(4)(B)(v) explicitly provides that police

16

officers have a "'significant privacy interest' in their disciplinary records that do not involve a discharge from their employment."

SHOPO further argues that SHOPO v. SPJ is not controlling in this case because this court's analysis in SHOPO v. SPJ was limited to an analysis of a prior version of the UIPA, before Act 242 became effective.  SHOPO also maintains that the SHOPO v. SPJ court recognized that, under article I, section 6 of the Hawaiʻi Constitution, the legislature has the authority to define the scope of the protected right of privacy, and that when the legislature enacted Act 242, it broadened the protections of the right of privacy to encompass police officers' disciplinary suspension records.

Civil Beat does not dispute that UIPA recognizes a significant privacy interest in disciplinary information in police officers' personnel files unless the officer is discharged, but argues that this "does not mean police officers have a right to insist that HPD withhold all such files." According to Civil Beat, even these "significant privacy interests" must be balanced against the public interest in disclosure.

Civil Beat further argues that this court and the OIP have already weighed those interests and determined that the

public interest in disclosure outweighs the police officers' privacy concerns.  Essentially, Civil Beat argues that because the UIPA implements the constitutional right of privacy, the privacy interest in disciplinary suspension records recognized by UIPA is equivalent to the constitutional right of privacy under article I, section 6.  Thus, according to Civil Beat, even though this court in SHOPO v. SPJ was applying a prior version of the UIPA, when the court balanced the constitutional privacy interest in disciplinary suspension records against the public interest in disclosure, this balancing also applies to the current version of the UIPA.

On this point, SHOPO is correct.  Although UIPA does, as Civil Beat contends, implement article I, section 6, the plain language of Act 242 clearly indicates that the legislature recognized a "significant privacy interest" in police officers' disciplinary suspension records in HRS § 92F-14(b).  Because this court in SHOPO v. SPJ stated that there was no privacy interest in disciplinary suspension records protected by article I, section 6, the "significant privacy interest" recognized in Act 242 is clearly broader than the non-existent right of privacy recognized by this court in SHOPO v. SPJ.

This court's analysis in SHOPO v. SPJ was based on a prior version of the UIPA, before the legislature recognized a

18

significant privacy interest in police officers' disciplinary suspension records.  Furthermore, Civil Beat has not provided any authority to show that the legislature is without power to broaden the definition of the right of privacy to recognize a significant privacy interest in police officers' disciplinary suspension records, as it did in Act 242.  The circuit court thus erred in finding that police officers have a "non-existent privacy interest" in their disciplinary suspension records.

## 1.    Article I, section 6, UIPA, and Act 242

Article I, section 6 of the Hawaiʻi Constitution provides:  "The right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest.  The legislature shall take affirmative steps to implement this right."  Thus, article I, section 6 recognizes a general right of privacy and tasks the Hawaiʻi Legislature with implementing that right.

The Hawaiʻi Legislature has implemented this right to privacy in the UIPA.  See HRS § 92F-2 ("The policy of conducting government business as openly as possible must be tempered by a recognition of the right of the people to privacy, as embodied in section 6 and section 7 of article I of the constitution of the state of Hawaiʻi.").  Codified in HRS chapter 92F, UIPA was enacted in 1988 for the following purposes:

19

> (1) Promot[ing] the public interest in disclosure;
>
> (2) Provid[ing] for accurate, relevant, timely, and complete government records;
>
> (3) Enhanc[ing] governmental accountability through a general policy of access to government records;
>
> (4) Mak[ing] government accountable to individuals in the collection, use, and dissemination of information relating to them; and
>
> (5) Balanc[ing] the individual privacy interest and the public access interest, allowing access unless it would constitute a clearly unwarranted invasion of personal privacy.

HRS § 92F-2 (2012).

The UIPA establishes the general rule of disclosure that "[e]xcept as provided in section 92F-13, each agency upon request by any person shall make government records available for inspection and copying during regular business hours." HRS § 92F-11(b) (Supp. 2014); see also SHOPO, 83 Hawai‘i at 383, 927 P.2d at 391. The UIPA also provides for certain types of government records that <u>must</u> be disclosed (HRS § 92F-12), and certain types of records that are exempted from the general disclosure requirement (HRS § 92F-13). The current version of HRS § 92F-13, which excludes certain records from disclosure requirements, is substantively identical to the original version enacted in 1988, and provides:

> This part shall not require disclosure of:
>
> (1) <u>Government records which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy</u>;

20

> (2) Government records pertaining to the prosecution or defense of any judicial or quasi-judicial action to which the State or any county is or may be a party, to the extent that such records would not be discoverable;
>
> (3) Government records that, by their nature, must be confidential in order for the government to avoid the frustration of a legitimate government function;
>
> (4) Government records which, pursuant to state or federal law including an order of any state or federal court, are protected from disclosure; and
>
> (5) Inchoate and draft working papers of legislative committees including budget worksheets and unfiled committee reports; work product; records or transcripts of an investigating committee of the legislature which are closed by rules adopted pursuant to section 21-4 and the personal files of members of the legislature.

HRS § 92F-13 (2012) (emphasis added).

Thus, although the general rule is that government agencies must disclose records upon request, section 92F-13 exempts from disclosure any record that, if disclosed, would constitute a "clearly unwarranted invasion of personal privacy."

HRS § 92F-14 currently states, as it did in 1988, that "[d]isclosure of a government record shall not constitute a clearly unwarranted invasion of personal privacy if the public interest in disclosure outweighs the privacy interest of the individual." HRS § 92F-14(a). Section 92F-14 then goes on, in subsection (b), to list a number of examples of the types of information in which an individual has a "significant privacy interest." Relevant to the present appeal, the legislature has made significant changes to section 92F-14(b) on two occasions

21

since 1988.  As originally enacted, UIPA recognized that individual employees had a significant privacy interest in the following relevant information:

> (b)   The following are examples of information in which the individual has a significant privacy interest:
>
> . . . .
>
> (4)   Information in an agency's personnel file, or applications, nominations, recommendations, or proposals for public employment or appointment to a governmental position, <u>except information relating to the status of any formal charges against the employee and disciplinary action taken</u> or information disclosed under section 92F-12(a)(14).[7]

HRS § 92F-14 (Supp. 1991) (emphasis added).

The 1988 version of UIPA thus provided that although individuals had significant privacy interests in their personnel file generally, there was <u>no</u> significant privacy interest in any

---

[7]   In 1988, HRS § 92F-12(a)(14) provided that agencies were required to make the following information available for public inspection:

> The name, compensation (but only the salary range for employees covered by chapters 76, 77, 297 or 304), job title, business address, business telephone number, job description, education and training background, previous work experience, dates of first and last employment, position number, type of appointment, service computation date, occupational group or class code, bargaining unit code, employee agency name and code, department, division, branch, office, section, unit, and island of employment, of present or former officers or employees of the same agency, provided that this provision shall not require the creation of a roster of employees; except that this provision shall not apply to information regarding present or former employees involved in an undercover capacity in a law enforcement agency.

HRS § 92F-12(a)(14) (Supp. 1991).

disciplinary action taken against the employee.

In 1993, the legislature enacted Act 191, which amended HRS § 92F-14(b) to read as follows:

> (b)   The following are examples of information in which the individual has a significant privacy interest:
>
> . . . .
>
> > (4)   Information in an agency's personnel file, or applications, nominations, recommendations, or proposals for public employment or appointment to a governmental position, <u>except</u>:
> >
> > > (A)   Information disclosed under section 92F-12(a)(14); and
> > >
> > > (B)   <u>The following information related to employment misconduct that results in an employee's suspension or discharge</u>:
> > >
> > > > (i)     The name of the employee;
> > > > (ii)    The nature of the employment-related misconduct;
> > > > (iii)   The agency's summary of the allegations of misconduct;
> > > > (iv)    Findings of fact and conclusions of law; and
> > > > (v)     The disciplinary action taken by the agency;
> > > >
> > > > when the following has occurred: the highest non-judicial grievance adjustment procedure timely invoked by the employee or the employee's representative has concluded; a written decision sustaining the suspension or discharge has been issued after this procedure; and thirty calender days have elapsed following the issuance of the decision; <u>provided that this subparagraph shall not apply to a county police department officer with respect to misconduct that occurs while the police officer is not acting in the capacity of a police officer</u>[.]

23

HRS § 92F-14 (1993) (emphases added).

Thus, Act 191 amended section 92F-14 such that UIPA recognized no significant privacy interest in information relating to police officer misconduct if the misconduct occurred while the police officer was acting in the capacity of a police officer, thirty days had passed since the highest timely invoked grievance procedure, and the suspension or discharge was sustained in writing.

In 1995, the legislature again amended section 92F-14, when it enacted Act 242. Act 242 amended section 92F-14 to read as follows:

> (b)  The following are examples of information in which the individual has a significant privacy interest:
>
> . . . .
>
> (4)  Information in an agency's personnel file, or applications, nominations, recommendations, or proposals for public employment or appointment to a governmental position, except:
>
> > (A)  Information disclosed under section 92F-12(a)(14); and
> >
> > (B)  The following information related to employment misconduct that results in an employee's suspension or discharge:
> >
> > > (i)   The name of the employee;
> > > (ii)  The nature of the employment-related misconduct;
> > > (iii) The agency's summary of the allegations of misconduct;
> > > (iv)  Findings of fact and conclusions of law; and
> > > (v)   The disciplinary action taken by the agency;

24

> when the following has occurred:
> the highest non-judicial grievance
> adjustment procedure timely invoked
> by the employee or the employee's
> representative has concluded; a
> written decision sustaining the
> suspension or discharge has been
> issued after this procedure; and
> thirty calender days have elapsed
> following the issuance of the
> decision; <u>provided that this
> subparagraph shall not apply to a
> county police department officer
> except in a case which results in
> the discharge of the officer</u>.

HRS § 92F-14 (2012) (emphases added).

Thus, under Act 242, the UIPA recognizes a significant privacy interest in information in employees' personnel files, creates an exception from this significant privacy interest for information relating to employee misconduct that results in suspension or discharge, and then creates another exception to this exception for police officers, <u>unless</u> the misconduct resulted in the discharge of the officer. In other words, HRS § 92F-14 now recognizes a significant privacy interest in all information relating to police officer misconduct unless that misconduct resulted in the officer's discharge (in which case, there is no privacy interest).[8]

Based on the plain language of HRS § 92F-14(b), there

---

[8] The relevant portion of HRS § 92F-14 was amended again in 2014, when the legislature clarified that "this subparagraph" referred to subparagraph (B) and increased the number of days that must elapse following the written decision from thirty to ninety. <u>See</u> 2014 Haw. Sess. Laws Act 121, § 2 at 334-35.

is thus no question that the UIPA, as modified by Act 242, recognizes a "significant privacy interest" in personnel information relating to disciplinary action for police officer misconduct where that discipline resulted in the suspension of the police officer.

## 2.    SHOPO v. SPJ

Although this court decided SHOPO v. SPJ on November 15, 1996--after the July 6, 1995 effective date of Act 242--SHOPO v. SPJ interpreted the prior version of UIPA, as amended by Act 191, because the proceedings in that case began before Act 242's effective date. See SHOPO v. SPJ, 83 Hawai'i at 391, 927 P.2d at 399 ("The instant proceedings were begun well before the July 6, 1995 effective date and are, therefore, not affected by Act 242.  Accordingly, we hold that Act 242 does not moot this litigation.").

In SHOPO v. SPJ, the Society of Professional Journalists, University of Hawai'i Chapter (SPJ), requested from HPD the names and titles of all HPD employees "who, from January 1, 1998 to [August 30, 1993], were either suspended or discharged as a result of disciplinary action against them." SHOPO v. SPJ, 83 Hawai'i at 384, 927 P.2d at 392.  SPJ also requested "information that explains the nature of the employment-related misconduct, any findings of fact and

26

conclusions of law, and the type of disciplinary action taken by your department." Id. Although HPD did not outright deny SPJ access to these records, a dispute arose regarding SPJ's obligation to pay for the records. Id. at 384-86, 927 P.2d at 392-94.

Before this dispute was resolved, SHOPO filed a lawsuit against HPD, seeking a declaratory judgment that, inter alia, "HRS Chapter 92F is unconstitutional and, therefore, void; and . . . HPD may not release the type of information sought by SPJ under Chapter 92F." Id. at 386, 927 P.2d at 394. The circuit court granted SHOPO's request for a temporary restraining order (TRO), enjoining HPD from disclosing the information pending the outcome of the lawsuit. Id.

SPJ also filed suit, and requested that the circuit court order HPD to produce all the relevant records in response to its request. Id. SPJ and OIP both intervened as defendants in the lawsuit filed by SHOPO. Id. at 387, 927 P.2d at 395. The circuit court granted SPJ's MSJ and ordered HPD to disclose the relevant records. Id. at 387-88, 927 P.2d at 395-96.

On appeal, this court noted that "[a]t the heart of the City's appeal is its contention that disclosure of police disciplinary records, pursuant to HRS § 92F-14(b)(4)(B), constitutes an unconstitutional invasion of police officers'

27

right of privacy in violation of article I, section 6 of the Hawai'i Constitution . . . ." Id. at 396, 927 P.2d at 404.  In response to the City's argument, this court held:

> [I]n adopting Act 191, the Legislature balanced the competing interests of individual privacy and public access and concluded, as a matter of public policy, that after a public employee has exhausted any nonjudicial grievance procedures available to him or her and charges of employment-related misconduct have been sustained, resulting in suspension or discharge, the public interest in disclosure of that person's name and information regarding the misconduct outweighs the employee's privacy interest.  The City has failed to overcome the presumption that the Legislature has achieved this balance in accordance with the mandate of article I, section 6 of the Hawai'i Constitution.
>
> Moreover, considering the history of article 1, section 6 of the Hawai'i Constitution, our prior interpretation of that section, and the great weight of authority from other jurisdictions, we hold that information regarding a police officer's misconduct in the course of his or her duties as a police officer is not within the protection of Hawai'i's constitutional right to privacy.

Id. at 396-97, 927 P.2d at 404-05.

Thus, this court held that the UIPA, as amended by Act 191, did not violate article I, section 6 of the Hawai'i Constitution by requiring disclosure of police disciplinary suspension records.  In undertaking this constitutional analysis, this court stated that:

> Under the holding in Painting Industry, the privacy right protected by the "informational privacy" prong of article I, section 6 is the right to keep confidential information which is "highly personal and intimate."  The issue, therefore, is whether the identities and disciplinary records of police officers who have engaged in such misconduct in the course of their public duties . . . is "highly personal and

28

> intimate information." The legislature, having
> determined as a matter of public policy that public
> employees who have been suspended or discharged for
> employment-related misconduct do not have a
> significant privacy interest in information about that
> misconduct, obviously answered in the negative. So
> too have those jurisdictions that have considered the
> issue.

Id. at 398, 927 P.2d at 406 (emphasis added).

> This court ultimately held that:

> HRS § 92F-14(b)(4)(B) does not implicate the right of
> privacy protected by article I, section 6 of the
> Hawaiʻi Constitution. The information that must be
> disclosed pursuant to HRS § 92F-14(b)(4)(B) regarding
> a public employee's employment-related misconduct and
> resulting discipline, is not "highly personal and
> intimate information" and is, therefore, not within
> the scope of Hawaiʻi's constitutional right to
> privacy.

Id. at 400, 927 P.2d at 408.

This court in SHOPO v. SPJ therefore limited its analysis to whether application of the UIPA, as amended by Act 191, violated the right to privacy in article I, section 6 of the Hawaiʻi Constitution. This court did not, however, determine whether disclosure of the police officers' disciplinary suspension records violated UIPA as amended by Act 242 because, even though Act 242 had already become effective, Act 242 was not applicable to the request for records in that case.

Thus, contrary to the circuit court's finding in the present case, this court in SHOPO v. SPJ did not choose to "additionally and separately address [Act 242's] shortcomings"; instead, the SHOPO v. SPJ court's analysis of Act 242 was limited

29

to a determination that Act 242 was not applicable to the facts of the case, and that as a result, Act 242 did not render the case moot. In this case, unlike in SHOPO v. SPJ, SHOPO does not ask us to determine whether disclosure of the police officers' disciplinary suspension records would violate article I, section 6, but asks us to determine whether such disclosure would violate the police officers' privacy interests under the UIPA, as amended by Act 242. The court in SHOPO v. SPJ did not answer this question, so SHOPO v. SPJ is not controlling in this regard.

Similarly, Civil Beat's reliance on Painting Industry is also misplaced. Civil Beat relies on a single statement in Painting Industry that, because the UIPA implements the constitutional right of privacy, "the scope of information protected must be consistent with that right." (Quoting Painting Industry, 69 Haw. at 453, 746 P.2d at 81-82). Civil Beat argues that this means that the scope of the privacy interest in the UIPA, as amended by Act 242, is identical to the constitutional right discussed in SHOPO v. SPJ.

First, the court's conclusion in Painting Industry is not dispositive because it was interpreting the statutory right of privacy as it stood before the UIPA was enacted. Second, although the court in Painting Industry looked to the scope of the privacy protection in article I, section 6 of the Hawai'i

30

Constitution to help determine the scope of the statutory right of privacy, the court's statement that the statutory right "must be consistent with" the constitutional right means simply that the legislature may not limit the scope of privacy protected so as to allow disclosure of records that are protected by the constitution. Put another way, article I, section 6 establishes a floor for protection of privacy rights, but does not preclude the legislature from providing greater protection. Thus, contrary to Civil Beat's argument, Painting Industry does not stand for the proposition that the legislature is powerless to amend the statutory right to privacy to provide protections beyond what was discussed in SHOPO v. SPJ.

SHOPO also asserts that part of the SHOPO v. SPJ court's analysis was that the legislature, in the applicable version of the UIPA, had unambiguously determined "as a matter of public policy" that police officers do not have a significant privacy interest in information about their disciplinary suspensions. SHOPO contends that this means that this court acknowledged that it is the Hawaiʻi Legislature's responsibility to "define constitutional protected privacy rights."[9] Although

---

[9] In support of this argument, SHOPO also cites to the Proceedings of the Constitutional Convention of Hawaiʻi, which states that the Convention, when drafting article I, section 6, felt that:

(continued...)

we do not agree that it is the Legislature's exclusive role to "define" the constitutional privacy right, nevertheless, as set forth above, the legislature is not precluded from providing privacy protections greater than those provided by the constitution.

Civil Beat also relies on OIP Opinion Letter No. 97-01, which concludes that "Act 242 recognized that suspended police officers . . . have a significant privacy interest in information relating to their employment misconduct." Id. at 5.  The OIP went on to analyze the effect of the SHOPO v. SPJ decision on Act 242, and determined that:

> The SHOPO ruling eliminates the primary intent of Act 242 . . . of recognizing that suspended police officers have significant privacy interests in employment-related misconduct information.  Because the SHOPO decision erodes the significant weight assigned by the Legislature to the suspended officer's privacy interest, as set out in Act 242, then only a "scintilla" of public interest is enough to overcome this privacy interest in the balancing test.

---

(...continued)
> We in the bill of rights committee could have gone through the process of listing all the different ways in which the right to privacy should be protected, but we felt that this was not our job as constitutional delegates, that we should merely state broad principles and then let the legislature balance all the different kinds of rights--the Freedom of Information Act, the right of the people to know (though not put in our Constitution, it still exists), the right of attorneys to discover information, the freedom of the press.  The legislature should balance all of these different competing rights and then have something which would implement the right of privacy.

1 Proceedings of the Constitutional Convention of Hawaiʻi 1978, at 639 (1980).

Id. at 8.

As explained supra, SHOPO v. SPJ does not "eliminate[] the primary intent of Act 242" because SHOPO v. SPJ applied the prior version of the UIPA only, and because the legislature possesses the authority to enact a broader privacy protection than that articulated by this court in SHOPO v. SPJ in its analysis of article I, section 6.  Under the OIP's analysis, which Civil Beat argues we should adopt, the legislature's amendments to the UIPA in Act 242 would be a nullity, and the legislature would be powerless to change the scope of the privacy protection for disciplined police officers, despite article I, section 6's mandate that "[t]he legislature shall take affirmative steps to implement this right [of privacy]."  Haw. Const. art. I, § 6.  Thus, the OIP's analysis in Opinion Letter No. 97-01 is palpably erroneous and does not inform our interpretation of SHOPO v. SPJ or Act 242.[10]

In sum, the legislature recognized a significant privacy interest in police officers' disciplinary suspension records in Act 242.  However, as discussed below, this privacy interest does not absolutely preclude disclosure, and must still

_____

[10]     This court has held that OIP's interpretations of its governing statutes are entitled to deference unless found to be "palpably erroneous." Kanahele v. Maui Cnty. Council, 130 Hawaiʻi 228, 245-46, 307 P.3d 1174, 1191-92 (2013).  An OIP opinion is "palpably erroneous" when "inconsistent with underlying legislative intent."  Id. at 246, 307 P.3d at 1192.

be weighed against the public's interest in the information.

**B.    HRS § 92F-14, as amended by Act 242, requires a weighing of the individual's "significant privacy interest" against the public interest in disclosure**

SHOPO argues that when the Hawaiʻi Legislature enacted Act 242, it balanced the competing interests and intended to preclude police officers' disciplinary suspension records from public disclosure without any further weighing required by the courts.  Although SHOPO acknowledges that "'once a significant privacy interest is found' the second step is to balance that interest 'against the public interest in disclosure,'" (citing SHOPO v. SPJ, 83 Haw. at 383, 927 P.2d at 391) it argues that the Hawaiʻi Legislature performed this balancing in Act 242. According to SHOPO, the legislative history of Act 242 demonstrates this intent.

Civil Beat argues that even though the legislature recognized a significant privacy interest in police officers' disciplinary suspension records in Act 242, the legislature did not provide "absolute confidentiality" for these records, and the privacy interest must still be weighed against the public interest in disclosure before disclosure is precluded.  Civil Beat contends that interpreting the UIPA to create absolute confidentiality in these types of records despite the legislature's silence on the matter would be contrary to the

UIPA's underlying purpose.

When construing a statute, "our foremost obligation is to ascertain and give effect to the intention of the legislature." Kauai Springs, Inc. v. Planning Comm'n of Cnty. of Kauai, 133 Hawaiʻi 141, 163, 324 P.3d 951, 973 (2014). A statute must be read in context and construed in a manner consistent with its purpose and "each part or section of a statute should be considered in connection with every other part or section." Id. If a statute is ambiguous, we may take into account the statute's legislative history. Id.

HRS § 92F-13 exempts from disclosure any record that, if disclosed, would constitute a "clearly unwarranted invasion of personal privacy." HRS § 92F-14(a) provides that "[d]isclosure of a government record shall not constitute a clearly unwarranted invasion of personal privacy if the public interest in disclosure outweighs the privacy interest of the individual." HRS § 92F-14(b) then unambiguously includes police officers' disciplinary suspension records as an example of the type of record in which the individual has a "significant privacy interest." Nowhere in the UIPA does the legislature state that disclosure of police officers' disciplinary records constitutes a "clearly unwarranted invasion of personal privacy."

The terms "significant privacy interest" and "clearly

35

unwarranted invasion of personal privacy" are not the same, and where the legislature uses different terms in different parts of a statute, we must presume this was intentional, and that the legislature means two different things. Agustin v. Dan Ostrow Constr. Co., 64 Haw. 80, 83, 636 P.2d 1348, 1351 (1981). Indeed, HRS § 92F-14(a) indicates that for a "significant privacy interest" to constitute a "clearly unwarranted invasion of personal privacy," the privacy interest at stake must be balanced against the public interest in disclosure of the information. Thus, the structure and language of HRS § 92F-14 indicate that once a "significant privacy interest" is recognized, it must be balanced against the public interest in disclosure to determine whether disclosure of the information would constitute a "clearly unwarranted invasion of privacy."

This interpretation is supported by the UIPA's legislative history. When the UIPA was enacted in 1988, the House Judiciary Committee explained that "described in [section 92F-14(b)] are examples of those records in which the individual has a significant privacy interest. Your Committee intends that these records are available following application of the 'balancing test' to determine whether the public interest in disclosure outweighs the individual privacy interest." H. Stand. Comm. Rep. No. 342-88, in 1988 House Journal, at 969 (emphases

36

added).  Commenting on the same provision, the Conference

Committee also stated that "[o]nce a significant privacy interest

is found, the privacy interest will be balanced against the

public interest in disclosure."  Conf. Comm. Rep. No. 112-88, in

1988 House Journal, at 818.  These statements in the committee

reports, made in reference to versions of the provision identical

to the final version (which is also identical the current

version), indicate that there may be instances in which an

individual has a significant privacy interest in certain

information, but the public interest in disclosure is great

enough that it outweighs the individual's privacy interest.

Furthermore, this court in SHOPO v. SPJ came to the

same conclusion.  The SHOPO v. SPJ court stated that:

> The instant case requires application of HRS
> § 92F-13(1), excepting from the general disclosure
> requirement "[g]overnment records which, if disclosed,
> would constitute a clearly unwarranted invasion of
> personal privacy[.]"  The conference committee's
> explanation of this provision, which it "intended to
> serve as a clear legislative expression of intent
> should any dispute arise as to the meaning of these
> provisions[,]" is that, "[o]nce a significant privacy
> interest is found, the privacy interest will be
> balanced against the public interest in disclosure.
> If the privacy interest is not 'significant,' a
> scintilla of public interest in disclosure will
> preclude a finding of a clearly unwarranted invasion
> of personal privacy."  Conf. Comm. Rep. No. 112-88, in
> 1988 House Journal, at 817-18.

SHOPO v. SPJ, 83 Hawai'i at 383-84, 927 P.2d at 391-92.

This court thus found that:

> HRS § 92F-14(b)(4) expressly confirms that an

37

> individual has a "significant privacy interest" in
> information in an agency's personnel file, with the
> exception of the specified information relating to
> misconduct.  This information unrelated to misconduct,
> therefore, is exempt from the general disclosure
> requirement <u>unless "the public interest in disclosure
> outweighs the privacy interests of the individual</u>."

<u>Id.</u> at 399-400, 927 P.2d at 407-08 (emphasis added).

The <u>SHOPO v. SPJ</u> court therefore held that information in which an individual has a "significant privacy interest," such as "information unrelated to misconduct," may nonetheless be subject to disclosure if the public interest in disclosure outweighs the individual's privacy interest.

Although, as noted above, the <u>SHOPO v. SPJ</u> court was applying a prior version of the UIPA, nothing in Act 242's amendments to the UIPA purports to change this analysis.  Act 242 amended section 92F-14 so that the provision required disclosure for police disciplinary actions resulting in discharge,[11] but left all other types of disciplinary action in the "significant privacy interest" category, for which additional weighing is required.  In fact, the textual amendments in Act 242 support

_____

[11]    Pursuant to <u>SHOPO v. SPJ</u>, if a police officer is discharged rather than suspended as a result of a disciplinary action, disclosure would be required upon showing a mere "scintilla" of public interest in disclosure. <u>Shopo v. SPJ</u>, 83 Hawaiʻi at 383-84, 927 P.d at 391-92 ("If the privacy interest is not 'significant,' a scintilla of public interest in disclosure will preclude a finding of a clearly unwarranted invasion of personal privacy.") (quoting Conf. Comm. Rep. No. 112-88, in 1988 House Journal at 817-18).  We note that because Act 242 recognizes a significant privacy interest in suspension records, and all of the records at issue in the present case involve disciplinary suspensions rather than discharges, the "scintilla" test is not applicable here.

this analysis because in addition to including police officers'
disciplinary suspension records as a "significant privacy
interest," Act 242 changed the title of HRS § 92F-14 from
"Clearly unwarranted invasion of personal privacy" to
"Significant privacy interest; examples."  1995 Haw. Sess. Laws,
Act 242 § 1, at 641.  This amendment further clarifies that the
listed examples are not "clearly unwarranted invasions of
personal privacy," but are instead "significant privacy
interests."

Further, although SHOPO v. SPJ was decided after the
legislature enacted Act 242, the OIP had also come to the same
conclusion before Act 242 was enacted.  See OIP Op. Ltr.
No. 90-12, February 26, 1990, at 8, available at
http://files.hawaii.gov/oip/opinionletters/opinion 90-12.PDF
(stating that although an agency employee has a "significant
privacy interest" in information relating to disciplinary action
that is not in response to a "formal charge," there are
circumstances where "the public interest in disclosure may
outweigh the employee's privacy interest in the fact that
disciplinary action was taken and the circumstances surrounding
that action") (emphasis added).

The legislature is presumed to know the law when it
enacts statutes, including this court's decisions, and agency

39

interpretations.  See Agustin, 64 Haw. at 83, 636 P.2d at 1351 ("[T]he legislature is presumed to know the law when enacting statutes, and we must presume that the legislature knew of the definition we assigned to the word 'accrued' in Yoshizaki v. Hilo Hospital, 50 Haw. 150, 433 P.2d 220 (1967), at the time it amended § 657-8 in 1972."); Keliipuleole v. Wilson, 85 Hawai'i 217, 225-26, 941 P.2d 300, 308-09 (1997) ("Presumably the legislature was aware of the status of the law and the policies of the [Board of Land and Natural Resources], yet declined to amend the statute.").  Thus, we must presume that the legislature was aware of the OIP's interpretation of HRS § 92F-14 when it enacted Act 242.  The legislature nonetheless chose to place police officer disciplinary suspension records in the provision that recognized a "significant privacy interest," instead of creating an explicit exclusion from the UIPA's disclosure requirements.

SHOPO cites to remarks in the legislative history of Act 242 to support its argument that the legislature intended, in Act 242, to conclusively weigh the interests and find that police officers' disciplinary suspension records are precluded from disclosure.

However, SHOPO's argument is without merit.  First, as explained supra, the language of the UIPA, as amended by Act 242,

40

unambiguously requires us to balance the interests upon finding a significant privacy interest, and as such, we need not resort to the legislative history in order to interpret it.  See Seki ex rel. Louie, 133 Hawai'i at 406-07, 328 P.3d at 415-16.  Second, an analysis of Act 242's legislative history reveals no clear statement of intent that would warrant overriding what appears to be clear from the plain language of the statute--that we must weigh the police officers' significant privacy interest against the public interest in disclosure of their disciplinary suspension records.

To support its argument, SHOPO points to two committee reports accompanying S.B. No. 171 (the bill that proposed Act 242) which, SHOPO argues, indicate that the legislature intended to preclude disclosure of disciplinary suspension records. First, the joint Senate Standing Committee report of the Judiciary, Agriculture, Labor, and Employment Committees, which referred to the original proposed version of S.B. No. 171, stated:  "The purpose of the bill, as originally received, is to exclude from required disclosure under the government records law, information pertaining to police department personnel misconduct."  S. Stand. Comm. Rep. No. 627, in 1995 Senate Journal, at 1064.  The joint committees went on to amend the bill as follows:

41

> To address some of the concerns expressed in testimony, your Committees have amended this bill by extending the applicability of the disclosure requirement to acts of police misconduct which result in the discharge of an officer.  Your Committees have further amended this bill by directing the chief of each county police department to submit an annual report to the legislature containing information on the number of police officers suspended or discharged by the department over the year.  Your Committees find that this bill, as amended, balances the concern over the public's right to know with the considerations involved in ensuring and maintaining an effective system of law enforcement in the State.

S. Stand. Comm. Rep. No. 627, in 1995 House Journal, at 1064.

However, contrary to SHOPO's argument, this purpose statement merely shows that the committees read the bill as proposing to exclude disciplinary suspensions from <u>required disclosure</u>; that is, the type of disclosure that disciplinary <u>discharge</u> records are subject to (where a "scintilla" of public interest in disclosure is sufficient to require disclosure).  The report, however, is silent as to the whether other records (e.g., those for which disclosure is not "required," but in which there is a "significant privacy interest") are subject to balancing against the public interest in disclosure.

SHOPO also argues that the joint committees' addition of a legislative reporting requirement to HRS § 52D-3.5[12]

---

[12]     This proposal was ultimately enacted as HRS § 52D-3.5, which provides, in relevant part:

> (a) The chief of each county police department shall submit to the legislature no later than January 31 of each year an annual report of misconduct incidents

(continued...)

constituted the legislature's solution after it had balanced the privacy interests of the officers against the public interest in disclosure.  However, there is no indication that HRS § 52D-3.5 was the product of such balancing.  The committee stated that the bill would "balance[] the concern over the public's right to know with the <u>consideration involved in ensuring and maintaining an effective system of law enforcement in the State</u>."  <u>Id.</u> (emphasis added).  This, however, is not the same balancing that must be performed under HRS § 92F-14(a) because there is no mention of the "privacy interest of the individual."  HRS § 92F-14(a).

SHOPO next points to a standing committee report of the House Judiciary Committee, which states that "[t]he purpose of [S.B. No. 171] is to prevent the disclosure of the names of administratively disciplined police officers, unless they have been discharged from the force."  H. Stand. Comm. Rep. No. 1584, in 1995 House Journal, at 1627.

Although the purpose statement in this report also seems to support SHOPO's argument, the House draft bill accompanying the report, S.B. 171, S.D.1, H.D.1, 18th Leg., Reg. Sess. (1995), contained a statement that the purpose of the bill

---

(...continued)
        that resulted in suspension or discharge of a police
        officer.

was to "provid[e] that the names of the administratively disciplined officers are not subject to the disclosure requirements of [section 92F-14(b)(4)] unless the discipline imposed is discharge from the force."  Again, this statement suggests that the intent was merely to prevent <u>mandatory</u> disclosure of disciplinary suspension records, but is silent as to whether further weighing against the public interest in disclosure is required.

Furthermore, the remainder of the committee report does not support SHOPO's argument.  The committee concluded that "the release of police officers' names <u>simply because they have been suspended</u> is not appropriate since they are subject to more stringent standards and tougher discipline than most other government employees[.]"  H. Stand. Comm. Rep. No. 1584, in 1995 House Journal, at 1627 (emphasis added).  The committee also expressed concern that police officers, "unlike most government and private employees, are subject to para-military discipline which manifests itself in the form of frequently applied suspensions from duty for misconduct or violation of departmental rules."  <u>Id.</u>

Thus, the clear concern of the House committee was that requiring disclosure of disciplinary suspension records in all cases would lead to the disclosure of officers' names for rule

44

violations which, in other professions, would not be as serious and may not result in suspension. The corollary to this concern is the committee's apparent recognition that in more serious circumstances, disclosure of disciplinary suspension records is appropriate. The committee's concern is thus consistent with interpreting Act 242 as requiring a balancing of the individual officers's privacy interests against the public interest in disclosure. Instances of less serious police officer misconduct, even those resulting in suspension, would likely not be subject to disclosure because the officers' significant privacy interests would outweigh the public's interest in knowing about the misconduct. The more egregious the misconduct, the more likely the public interest would outweigh the individual privacy interest.

SHOPO also relies on floor remarks by legislators who voted on Act 242 to support its argument that the legislature conclusively weighed the competing factors and determined that disciplinary suspension records should not be disclosed. For example, SHOPO cites to remarks made by Representative Amaral:

> [P]olice Officers are held to high standards, are held to strict rules, are monitored and chastised in ways that I have never seen other people chastised or punished.
>
> And now I hear that the public is fearful of what police officers may be doing and, therefore, it needs to have the names of those police officers that have

45

> been disciplined administratively.  I hear that police
> officers need to be trusted and so the way that police
> officers can be trusted is if they will disclose the
> names of those officers that they have disciplined.
>
> The trust is a two-way street.  I think you've got to
> trust that there are systems and places for monitoring
> the behavior of these officers, for correcting their
> behavior, for punishing them appropriately.

(Quoting 1995 House Journal, at 681 (remarks of rep. Amaral)).

SHOPO also refers to remarks made by Senator Graulty, who quoted the testimony of HPD Chief Michael Nakamura:

> I also want to instill in the public the trust and
> confidence that if an officer commits a criminal act,
> that officer is prosecuted to the fullest extent of
> the law and the name of the officer is disclosed
> publicly.  Similarly, if an officer is sued civilly,
> that officer's name becomes part of the public record.
> However, it is not fair to punish police officers in
> the media, nor is it fair to expose and subject their
> friends and families to scorn, retaliation and threats
> by disclosing the police officers' names.

(Quoting 1995 Senate Journal, at 287 (remarks of Senator Graulty)).

SHOPO's reliance on these floor remarks is misplaced. First, remarks by individual legislators are not attributable to the full legislature that voted for the bill, and as such are less reliable indicators of legislative intent.  See Wright v. Home Depot U.S.A., Inc., 111 Hawai'i 401, 411 n.8, 142 P.3d 265, 275 n.8 (2006) ("To the extent that legislative history may be considered, it is the official committee reports that provide the authoritative expression of legislative intent. . . .  Stray comments by individual legislators, not otherwise supported by

46

statutory language or committee reports, cannot be attributed to the full body that voted on the bill.") (quoting <u>Bennett v. Yoshina</u>, 98 F. Supp. 2d 1139, 1150 (D. Haw. 2000)).

Second, even if we were to consider individual legislators' remarks as evidence of legislative intent, these remarks, like the committee reports, do not support SHOPO's argument because they do not expressly state any intent to preclude disclosure of disciplinary suspension records without first weighing the individual officers' privacy interests against the public interest in disclosure. Further, the remarks indicate the same concern noted by the committees, that requiring disclosure of suspension records could result in disclosure of officers' identities when they have been disciplined for relatively non-serious misconduct. For example, in remarks not cited by SHOPO, Representative Alcon stated, in support of S.B. No. 171:

> [T]his bill is a good bill because the police officers have a way of handling their internal problems. You mean to say, just because the policeman did not shine his shoes that we will have to publish his name in the paper? You mean to say that if a policeman is late reporting to work, we have to publish his name in the paper? You mean to say if a policeman did not make his report, do we have to publish his name in the paper?

1995 House Journal, at 682 (remarks of Rep. Alcon).

Again, recognition of these concerns is consistent with a reading of the UIPA that requires us to weigh the police

officers' privacy interest in disciplinary suspension records against the public interest in disclosure of the records.

Civil Beat, in further support of its position, argues that the legislative history of subsequent amendments to HRS §§ 92F-14 and 52D-3.5 in 2014 demonstrates that the legislature intended for the courts to weigh individual officers' privacy interests against the public interest in disclosure even after a significant privacy interest has been shown.

In Act 121, signed into law in 2014, the legislature specified with greater detail the information that police chiefs must report to the legislature in their annual reports regarding police discipline. Act 121 also changed the number of days that must elapse following a written decision affirming an employee's discharge or suspension before records may be disclosed from thirty to ninety in HRS § 92F-14(b)(4)(B)(v). See 2014 Haw. Sess. Laws, Act 121, §§ 1-2, at 333-35.

In arguing that the 2014 legislative history supports its position, Civil Beat notes that the Conference Committee "rejected the House's effort to address police suspensions by statute." The House had proposed amending the exception provided in HRS § 92F-14(b)(4)(B) to read, in relevant part: "provided that this subparagraph shall [not] apply to a county police department officer [except] only in a case which results in the

48

suspension of one year or more for one incident or the discharge

of the officer[.]"  S.B. 2591, S.D.1, H.D.1 § 2, 27th Leg., Reg.

Sess. 2014 (brackets and emphasis in original).[13]  The Conference

Committee deleted this proposed language and stated that its

version of the bill "creates a more informed public dialogue

about misconduct by police officers while recognizing that the

balance of privacy and public interest is not easily defined and

is a task better suited to common law."  Conf. Comm. Rep. No. 32-

14, in 2014 House Journal, at 1481-82.  Thus, according to Civil

Beat, "[t]he Legislature . . . refused to amend the misconduct

exception to address police suspensions because it interpreted

the existing plain language of the UIPA as leaving the balance of

interests to the courts[.]"

In addition, Civil Beat explains that when the House

Judiciary Committee proposed its amendment to HRS § 92F-

14(b)(4)(B), it cited SHOPO v. SPJ and acknowledged that the

decision may result in disclosure of such records:

> Your Committee respectfully notes that consistent with
> [SHOPO v. SPJ], allowing the disclosure of suspension
> information instead of just discharge information does
> not violate the privacy rights of individual police
> officers.  The Hawaiʻi Supreme Court held in SHOPO v.
> SPJ that, "The information that must be disclosed
> pursuant HRS § 92F-14(b)(4)(B) [sic] regarding a
> public employee's employment-related misconduct and

---

[13]    The brackets in the text indicate language that the draft bill proposed deleting from the existing statute, and the underlined text indicates language that the draft bill proposed adding to the statute.

>           resulting discipline, is not "highly personal and
>           intimate information" and is, therefore, not within
>           the scope of Hawaii's constitutional right to
>           privacy."  Nonetheless, your Committee has determined
>           to limit required disclosures of police misconduct to
>           suspensions of one year or more per incident and
>           discharges.

H. Stand. Comm. Rep. No. 1360-14, in 2014 House Journal, at 1364.

Civil Beat argues that the Legislature therefore "knew that

failure to amend the misconduct exception or enact a

confidentiality statute may result in disclosure under SHOPO v.

SPJ."

        SHOPO is correct that we should be wary of

"bootstrap[ping] the 2014 legislature's intent to the 1995

legislature's intent in enacting Act 242."  The legislative

history for Act 121 cited by Civil Beat is indicative of the 2014

legislature's intent when enacting Act 121.  It is not

dispositive of the 1995 legislature's intent when it enacted Act

242.  Further, the 2014 House Judiciary Committee's reference to

SHOPO v. SPH is not relevant to the issue here because SHOPO v.

SPJ did not interpret Act 242.  Thus, the 2014 legislature's

rejection of the proposed amendment to HRS § 92F-14(b)(4)(B) does

not inform our understanding of Act 242.

        Ultimately, although the relevant legislative history

of Act 242 contains some evidence of an intent to preclude

disclosure of police disciplinary suspension records, the

legislative history of Act 242 as a whole lacks any clear statement of such intent, which would be contrary to the plain language of the statute. At best, the legislative history shows an intent to preclude disclosure of disciplinary suspension records in certain circumstances--i.e., where the police officers' misconduct is not egregious. This is consistent with our reading of the plain language of HRS § 92F-14, which requires, after finding a significant privacy interest in the records sought, balancing that privacy interest against the public interest in disclosure of the records.

C.    **Given the limited factual record in this case, we must remand to the circuit court to weigh the public and privacy interests**

The circuit court, relying on SHOPO v. SPJ, reasoned that police officers have no protected privacy interest in their disciplinary records and concluded that "public access interest would outweigh non-existent privacy interests in on-duty police misconduct." By not considering police officers' "significant privacy interest" in their records, the court did not engage in the balancing required by HRS § 92F-14. Given the limited factual record developed in this case, this court cannot now properly weigh the interests in each instance of misconduct. Thus, we must remand this case to the circuit court to determine whether the public interest in disclosure outweighs the privacy

interests at stake.  As contemplated by HRS § 92F-15, the court should conduct an in camera[14] review of the records and determine on a case-by-case basis whether disclosure is warranted.  See HRS § 92F-15(b) (In actions to compel disclosure of government records, "[t]he circuit court may examine the government record at issue, in camera, to assist in determining whether it, or any part of it, may be withheld").

If the interests weigh in favor of disclosure of a record, the court should also determine whether any redaction is necessary, such as to remove identifying information of the victim of a crime.  Moreover, there is no compelling public interest in the disclosure of police officers' confidential personal information such as home addresses, dates of birth, social security numbers, driver's license numbers, and bank account information.  Such information, if present in relevant records, must be redacted.

We further note that this court, as well as many others, has emphasized the weight of the public interest in cases involving police officer misconduct.  In SHOPO v. SPJ, this court recognized that "the appropriate concern of the public as to the proper performance of public duty is to be given great weight"

---

[14]    An in camera review is a judge's private consideration of evidence.  See Black's Law Dictionary 878 (10th ed. 2014) (defining "in camera" as "[i]n the judge's private chambers").

when balanced against competing privacy interests.  83 Hawaiʻi at 399, 927 P.2d at 407 (quoting Cowles Publ'g Co. v. State Patrol, 748 P.2d 597, 605 (Wash. 1988)).  This is true when "the off duty acts of a police officer bear upon his or her fitness to perform public duty or if the activities reported in the records involve the performance of a public duty."  Id.

Similarly, in Rutland Herald v. City of Rutland, the Supreme Court of Vermont explained that substantial weight should be given to the public interest in disclosure because "there is a significant public interest in knowing how the police department supervises its employees and responds to allegations of misconduct."  84 A.3d 821, 825 (Vt. 2013).  The court highlighted the importance of the public's ability to "gauge the police department's responsiveness to specific instances of misconduct [and] assess whether the agency is accountable to itself internally[.]"  Id. (internal quotation marks and citation omitted).

In Tompkins v. Freedom of Information Commission, the Connecticut Appellate Court reviewed records regarding the disciplinary investigation of a discharged police officer and emphasized the need to "facilitate the public's understanding and evaluation of the [department's] investigative process, decision-making and overall handling of an important matter

involving a fellow police officer."  46 A.3d 291, 299 (Conn. App. Ct. 2012).  The court further noted that "the more egregious the specific behavior, the more a finding of legitimate public concern is warranted."  Id.

Lastly, in City of Baton Rouge/Parish of East Baton Rouge v. Capital City Press, L.L.C., the Louisiana First Circuit Court of Appeal found that "the public has a strong, legitimate interest in disclosure" of records of investigations into police misconduct.  4 So.3d 807, 821 (La. Ct. App. 2008).  The court reasoned that "[t]he public should be ensured that both the activity of public employees suspected of wrongdoing and the conduct of those public employees who investigate the suspects is open to public scrutiny."  Id. (internal quotation marks and citation omitted).

These cases recognize the compelling public interest in instances of police misconduct given the importance of public oversight of law enforcement.  Police officers are entrusted with the right to use force--even deadly force in some circumstances--and this right can be subject to abuse.  Public oversight minimizes the possibility of abuse by ensuring that police departments and officers are held accountable for their actions. The press's access to records such as those at issue here is one of the primary channels through which such public oversight can

operate.  See Gentile v. State Bar of Nevada, 501 U.S. 1030, 1035 (1991) ("[T]he press . . . guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism.") (quoting Sheppard v. Maxwell, 384 U.S. 333, 350 (1966)).  The more egregious the misconduct, and the more closely connected to the officer's performance of his or her duties as an officer, the more compelling this public interest.

Here, though the descriptions of the records requested by Civil Beat are brief (recounted in full, supra, part I.A), it is clear that the records involve serious misconduct.  These records include falsifying police reports, use of malicious force, wilfully injuring another employee, fabricating facts regarding probable cause, hindering investigations, and misappropriating police funds.  Further, two of the records--(1) the seventy-seven day suspension for falsifying a police report and being untruthful during an investigation and (2) the six hundred twenty-six day suspension for hindering a federal investigation--appear to involve particularly egregious conduct, as demonstrated by the length of the suspension imposed.

With these considerations in mind, during its in camera review of the records, the circuit court should review the misconduct at issue in each case and determine whether the public

interest in disclosure of such conduct outweighs the privacy interests of a particular officer.

**D.    SHOPO may not invoke the "frustration of a legitimate government function" exception on HPD's behalf**

SHOPO also argues that "[t]he disclosure of a police officer's disciplinary records would frustrate a legitimate government function" pursuant to HRS § 92F-13(3).[15]  In response, Civil Beat argues that SHOPO may not invoke the legitimate government function exception because only the agency from which the records have been requested may invoke the exception.

We conclude that Civil Beat is correct that only the relevant government agency--in this case HPD--may invoke this exception.

In OIP Opinion Letter No. 98-02, the OIP addressed arguments made by Hawaiʻi Management Alliance Association (HMAA) that the disclosure of eligible charges listed in HMAA's contract with Kona Community Hospital (KCH) would frustrate a legitimate government purpose.  OIP Op. Ltr. No. 98-02, at 1, 9, available at http://files.hawaii.gov/oip/opinionletters/opinion 98-02.pdf. HMAA argued that disclosure of the charges would mean other healthcare benefits companies would discover KCH's lowest

---

[15]    HRS § 92F-13 provides, in pertinent part:  "This part shall not require disclosure of: . . . (3) Government records that, by their nature, must be confidential in order for the government to avoid the frustration of a legitimate government function[.]"

acceptable price, which would mean they could negotiate lower payments to KCH, which in turn would result in higher copayments for patients.  Id. at 9.  The OIP stated that:

> Although HMAA raises these frustration arguments on behalf of KCH and [Hawaiʻi Health Systems Corporation], the federal courts have refused to allow a submitter to make such an argument on a government agency's behalf, particularly where the agency declines to make the argument itself.  Hercules, Inc. v. Marsh, 839 F.2d 1027, 1030 (4th Cir. 1988) (where an agency declines to argue that disclosure of information would impair the agency's ability to obtain similar information in the future, the court will not allow the submitter to raise the issue on the agency's behalf).  And in Comdisco, Inc. v. GSA, 864 F.Supp. 510 (E.D. Va. 1994), the court deferred to the agency's determination that disclosure of the requested information would not impair the agency's ability to obtain such information in the future.  The Comdisco court observed that the agency is in the best situation to determine if disclosure would inhibit future submissions.  Id. at 515.

Id. at 9-10 (footnote omitted).

The OIP thus concluded that "[a]s the agency does not claim that disclosure of the eligible charges from the HMSA and HMAA Contracts frustrates any legitimate government function of KCH or HHSC, the OIP finds that there is no frustration."  Id. at 10 (emphasis added).  SHOPO has not argued that the OIP's interpretation of HRS § 92F-13(3) is erroneous.

As Civil Beat notes, HPD did not claim in the circuit court that disclosure of the suspension records would frustrate

57

any government purpose.[16]  Moreover, HPD filed a notice of no position regarding SHOPO's appeal.  Thus, HPD has not claimed at any point in this litigation that disclosure of the records at issue would frustrate any legitimate government purpose, and SHOPO, as a third-party intervenor, cannot make that argument on HPD's behalf.

## IV.  Conclusion

HRS § 92F-14 recognizes a significant privacy interest in police officers' disciplinary suspension records, and this interest must be balanced against the public interest in disclosure of the requested records.  Given the limited factual record in this case, we cannot definitively determine whether disclosure of the requested records is appropriate.  The circuit court must engage in an in camera review of the requested records and determine whether the public interest outweighs the officers' significant privacy interest in each instance.  Thus, we vacate

---

[16]     In its opposition to Civil Beat's MSJ, HPD argued only the issue of whether disclosure would constitute an unwarranted invasion of the police officers' personal privacy.  Moreover, at the hearing on Civil Beat's MSJ, the only argument HPD made was that, when Civil Beat made its request for the records in this case, HPD was precluded from releasing the records pursuant to a 2001 circuit court order.

the circuit court's June 10, 2014 final judgment and remand for

proceedings consistent with this opinion.

| Keani Alapa and<br>Vladimir Devens<br>for intervenor-defendant-<br>appellant | /s/ Mark E. Recktenwald |
| --- | --- |
| | /s/ Paula A. Nakayama |
| | /s/ Michael D. Wilson |
| Donna Y.L. Leong, Paul S.<br>Aoki, Duane W.H. Pang and<br>Nicolette Winter for<br>defendants-appellees City<br>and County of Honolulu and<br>Honolulu Police Department | /s/ Jeffrey P. Crabtree |



Robert Brian Black
for plaintiff-appellee
Peer News LLC

Jeffrey S. Portnoy
and John P. Duchemin
for amicus curiae
The Reporters Committee
for Freedom of the Press